1    **SEYFARTH SHAW LLP**
Daniel Whang (SBN 223451)
2    dwhang@seyfarth.com
Laura E. Heyne (SBN 279478)
3    lheyne@seyfarth.com
2029 Century Park East, Suite 3500
4    Los Angeles, California 90067
Telephone:  (310) 277-7200
5    Facsimile:   (310) 201-5219
6    Attorneys for Defendant
THE AMERICAN BOTTLING COMPANY
7

8

9                    UNITED STATES DISTRICT COURT

10        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12    CURTIS HIGGINS, an individual,          Case No. 2:22-cv-5351

13                    Plaintiff,

14              v.                            **DEFENDANT'S NOTICE OF
                                             REMOVAL OF CIVIL ACTION TO
15    THE AMERICAN BOTTLING                   THE UNITED STATES DISTRICT
COMPANY; and DOES 1 through 10,       COURT**
16
                Defendants.              [Los Angeles County Superior Court
17                                       Case No. 22STCV13127]

18
                                         Complaint filed:      April 19, 2022
19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page(s)**

I.   BACKGROUND .................................................................................................1

II.  TIMELINESS OF REMOVAL...........................................................................1

III. CLASS ACTION FAIRNESS ACT ("CAFA") REMOVAL ...........................3

   A.   Plaintiff And Defendant ABC Are Diverse.............................................3

       1.   Plaintiff Is A Citizen Of California.............................................3

       2.   ABC is Not a Citizen Of California .............................................4

   B.   There Are More Than 100 Potential Class Members...............................5

   C.   The Amount In Controversy Exceeds The Statutory Minimum ................6

       1.   Rest Period Claims.....................................................................12

       2.   Waiting Time Penalties...............................................................13

       3.   Failure to Pay Overtime Wages .................................................15

       4.   Approximate Aggregate Amount In Controversy .........................17

       5.   Attorneys' Fees ..........................................................................17

IV.  VENUE..............................................................................................................20

V.   NOTICE TO STATE COURT AND TO PLAINTIFF .....................................20

VI.  PRAYER FOR REMOVAL ..............................................................................20

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT

85169776v.2

1
2

# TABLE OF AUTHORITIES

3

**Page(s)**

4

**Federal Cases**

5
6

*Abrego v. Dow Chemical Co.*,
 443 F.3d 676 (9th Cir. 2006)................................................................... 5, 7

7
8

*Arias v. Residence Inn by Marriott*,
 936 F.3d 920 (9th Cir. 2019).......................................................... 8, 16, 18

9
10

*Armstrong v. Church of Scientology Int'l*,
 243 F.3d 546 (9th Cir. 2000)...................................................................... 4

11

*Arreola v. The Finish Line*,
 2014 WL 6982571 (N.D. Cal. Dec. 9, 2014) ............................................ 9

12
13

*Brady v. Mercedes-Benz USA, Inc.*,
 243 F. Supp. 2d 1004 (N.D. Cal. 2002) .............................................. 17, 18

14
15

*Byrd v. Masonite Corp.*,
 2016 WL 2593912 (C.D. Cal. May 5, 2016) ........................................... 14

16
17

*Campbell v. Vitran Exp., Inc.*,
 471 F. App'x 646 (9th Cir. 2012) ............................................................ 19

18
19

*Castanon v. Int'l Paper Co.*,
 2016 WL 589853 (C.D. Cal. February 11, 2016) ...................................... 4

20
21

*Caterpillar, Inc. v. Williams*,
 482 U.S. 386 (1987) ................................................................................... 9

22
23

*Chavez v. JPMorgan Chase & Co.*,
 888 F.3d 413 (9th Cir. 2018)................................................................... 18

24

*Cicero v. DirecTV, Inc.*,
 2010 U.S. Dist. LEXIS 86920 (C.D. Cal. July 27, 2010)....................... 19

25
26

*City of Clarksdale v. BellSouth Telecommunications, Inc.*,
 428 F.3d 206 (5th Cir. 2005).................................................................... 2

27
28

*Coleman v. Estes Express Lines, Inc.*,
  730 F. Supp. 2d 1141 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) .................................... 10

*Curtis Higgins v. The American Bottling Company; and DOES 1 through 10, inclusive*,
  Case No. S22STCV13127 ........................................................................ 1

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
  574 U.S. 81, 135 S.Ct. 547 (2014) ......................................................... 8

*Davis v. HSBC Bank Nevada, N.A.*,
  557 F.3d 1026 (9th Cir. 2009) ................................................................. 4

*Feao v. UFP Riverside, LLC*,
  2017 WL 2836207 (C.D. Cal. June 26, 2017) ...................................... 10

*Franke v. Anderson Merchandisers LLC*,
  2017 WL 3224656 (C.D. Cal. July 28, 2017) ....................................... 10

*Fristoe v. Reynolds Metals Co.*,
  615 F.2d 1209 (9th Cir. 1980) ................................................................. 5

*Fritsch v. Swift Transp. Co. of Arizona, LLC*,
  899 F.3d 785 (9th Cir. 2018) ................................................................ 18

*Galt G/S v. JSS Scandinavia*,
  142 F.3d 1150 (9th Cir. 1998) .............................................................. 17

*Gant v. ALDI, Inc.*,
  2020 WL 1329909 (C.D. Cal. March 20, 2020) .................................. 16

*Guglielmino v. McKee Foods Corp.*,
  506 F.3d 696 (9th Cir. 2007) ............................................................. 7, 8

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010) .................................................................................. 5

*Jones v. Tween Brands, Inc.*,
  2014 WL 1607636 (C.D. Cal. Apr. 22, 2014) ...................................... 11

*Kantor v. Wellesley Galleries, Inc.*,
  704 F.2d 1088 (9th Cir. 1983) ................................................................ 3

iii

85169776v.2

*Korn v. Polo Ralph Lauren Corp.*,
   536 F. Supp. 2d 1199 (E.D. Cal. 2008)..................................................8

*Lew v. Moss*,
   797 F.2d 747 (9th Cir. 1986)..........................................................4

*Longmire v. HMS Host USA, Inc.*,
   2012 WL 5928485 (S.D. Cal. Nov. 26, 2012)................................18

*Lucas v. Michael Kors (USA), Inc.*,
   2018 WL 2146403 (C.D. Cal. May 9, 2018)..................................18

*Muniz v. Pilot Travel Ctrs. LLC*,
   2007 WL 1302504 (E.D. Cal. May 1, 2007)..........................8, 9, 18

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
   526 U.S. 344 (1999) ..................................................................2

*Oda v. Gucci Am. Inc.*,
   2015 WL 93335 (C.D. Cal. Jan. 7, 2015)....................................16

*Patel v. Nike Retail Servs., Inc.*,
   58 F. Supp. 3d 1032 (N.D. Cal. 2014).......................................16

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000).................................................19

*In re Quintas Secs. Litig.*,
   148 F. Supp. 2d 967 (N.D. Cal. 2001).......................................19

*Ramos v. Schenker, Inc.*,
   2018 WL 5779978 (C.D. Cal. Nov. 1, 2018)................................19

*Ray v. Wells Fargo Bank, N.A.*,
   2011 WL 1790123 (C.D. Cal. May 9, 2011)................................17

*Ritenour v. Carrington Mortg. Servs. LLC*,
   228 F. Supp. 3d. 1025 (C.D. Cal. 2017)....................................11

*Rodriguez v. AT&T Mobility Servs. LLC*,
   728 F.3d 975 (9th Cir. 2013)..............................................7, 8

*Sanchez v. Monumental Life Ins. Co.*,
   102 F.3d 398 (9th Cir. 1996).................................................7

iv

85169776v.2

*Schiller v. David's Bridal, Inc.*,
    2010 WL 2793650 (E.D. Cal. July 14, 2010) ......................................... 7

*Soliman v. Philip Morris, Inc.*,
    311 F. 3d 966 (9th Cir. 2002) ........................................................ 5

*Soratorio v. Tesoro Ref. and Mktg. Co., LLC*,
    2017 WL 1520416 (C.D. Cal. Apr. 26, 2017) ................................... 9, 10

*Standard Fire Ins. Co. v. Knowles*,
    568 U.S. 588 (2013) ..................................................................... 7

*Stanley v. Distribution Alternatives, Inc.*,
    2017 WL 6209822 (C.D. Cal. Dec. 7, 2017) ....................................... 16

*State Farm Mut. Auto Ins. Co. v. Dyer*,
    19 F.3d 514 (10th Cir. 1994) ........................................................ 3

*Tajonar v. Echosphere*,
    LLC, 2015 WL 4064642 (S.D. Cal. July 2, 2015) ............................... 14

*Torrez v. Freedom Mortg., Corp.*,
    2017 WL 2713400 (C.D. Cal. June 22, 2017) ................................... 10

*Valdez v. Allstate Ins. Co.*,
    372 F.3d 1115 (9th Cir. 2004) ...................................................... 8

*Wheatley v. MasterBrand Cabinets*,
    2019 WL 688209 (C.D. Cal. Feb. 19, 2019) ............................... 9, 16, 18

*Wren v. RGIS Inventory Specialists*,
    2011 U.S. Dist. LEXIS 38667 (N.D. Cal. Apr. 1, 2011) ....................... 19

*Zavala v. Deutsche Bank Trust Co. Americas*,
    2013 WL 3474760 (N.D. Cal. July 10, 2013) ..................................... 3

**State Cases**

*Falk v. Children's Hosp. Los Angeles*,
    237 Cal. App. 4th 1454 (2015) ...................................................... 15

*Murphy v. Kenneth Cole Prods.*, Inc.,
    40 Cal. 4th 1094 (2007) ............................................................. 12

v

85169776v.2

*Pineda v. Bank of America, N.A.*,
    50 Cal. 4th 1389 (2010) ............................................................... 12, 14

**Federal Statutes**

28 U.S.C. § 84(a) ............................................................................. 20

28 U.S.C. § 1332 ............................................................................... 5

28 U.S.C. § 1332(c) ........................................................................... 1

28 U.S.C. § 1332(c)(1) .................................................................... 4, 5

28 U.S.C. § 1332(d) ...................................................................... 6, 20

28 U.S.C. § 1332(d)(2) ............................................................. *passim*

28 U.S.C. § 1332(d)(2)(A) .................................................................. 3

28 U.S.C. § 1332(d)(5)(B) .............................................................. 3, 5

28 U.S.C. § 1332(d)(6) ................................................................... 3, 6

28 U.S.C. § 1367(a) ......................................................................... 20

28 U.S.C. § 1391(a) ......................................................................... 20

28 U.S.C. § 1441 ............................................................................. 20

28 U.S.C. § 1441(a) ........................................................... 1, 3, 5, 20

28 U.S.C. § 1446 ........................................................................... 1, 2

28 U.S.C. § 1446(b) ........................................................................... 2

28 U.S.C. § 1446(d) ......................................................................... 20

28 U.S.C. § 1453 ............................................................................... 1

Class Action Fairness Act of 2005 .......................................... *passim*

Pub.L. 112–63, December 7, 2011, 125 Stat. 758, § 103(b)(3)(C) (codified at
    28 U.S.C. § 1446(c)(2) (emphasis added)) ....................................... 7

**State Statutes**

Business and Professions Code § 17200, *et seq.* .......................... 12, 15

vi

Cal. Bus. & Prof. Code § 17208...................................................................13

Cal. Civ. Proc. Code § 338.........................................................................15

Cal. Civ. Proc. Code § 338, subd.(a) (Stats. 1935, ch. 581, § 1, p. 1673).....................14

Cal. Civ. Proc. Code § 415.10.......................................................................2

Cal. Lab. Code § 201..................................................................................13

Cal. Lab. Code § 202..................................................................................13

Cal. Lab. Code § 203..................................................................................14

Cal. Lab. Code § 203(a)..............................................................................14

Cal. Lab. Code § 226.7...............................................................................12

Cal. Lab. Code § 510..................................................................................15

Cal. Lab. Code § 1194................................................................................15

section 1332(a)...........................................................................................7

Unfair Competition Law.............................................................................2

**Regulations**

Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005),
    *reprinted in* 2005 U.S.C.C.A.N. 3, 40 .............................................................6

85169776v.2

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF, CURTIS HIGGINS, AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant The American Bottling Company ("ABC"), files this Notice of Removal, pursuant to 28 U.S.C. §§ 1332(c), 1332(d)(2), 1441(a), 1446, and 1453, to effectuate the removal of the above-captioned action from the Superior Court of California for the County of Los Angeles to the United States District Court for the Central District of California, Western Division.

This Court has original jurisdiction under 28 U.S.C. §§ 1332(c), (d)(2) – the Class Action Fairness Act of 2005 ("CAFA"). Removal is proper for the following reasons:

## I.   BACKGROUND

1.   On April 19, 2022, Plaintiff Curtis Higgins ("Plaintiff") filed a class action complaint in the Superior Court of California for the County of Los Angeles, entitled *Curtis Higgins v. The American Bottling Company; and DOES 1 through 10, inclusive*, Case No. S22STCV13127 ("Complaint").

2.   On June 30, 2022, ABC's registered agent for service of process in California received, via process server, the Summons; Complaint; ADR Information Package; Civil Case Cover Sheet; First Amended General Order; Notice of Case Assignment and additional preliminary documents. A true and correct copy of the documents received by ABC on June 30, 2022 is attached hereto as **Exhibit A**. A true and correct copy of the Service of Process Notification from CT Corporation is attached hereto as **Exhibit B.**

3.   ABC has not filed or received any other pleadings or papers, other than the pleadings described as **Exhibits A-B** in this action prior to this Notice of Removal. (Declaration of Daniel Whang ("Whang Decl."), ¶¶ 1-3).

## II.   TIMELINESS OF REMOVAL

4.   The time for filing a Notice of Removal does not run until a party has been formally served with the summons and complaint under the applicable state law "setting

1

forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. §§ 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint").

5.      The service of process which triggers the 30-day period to remove is governed by state law. *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law.").

6.      This Notice of Removal is timely because it is filed within thirty (30) days of service of the Complaint, by personal service on ABC's agent for service of process, on June 30, 2022. (Ex. B.) Cal. Code Civ. Proc. § 415.10 ("A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served. Service of a summons in this manner is deemed complete at the time of such delivery."); 28 U.S.C. § 1446(b). Thirty (30) days from the service of the Complaint on ABC on June 30, 2022, is July 30, 2022, which falls on a Saturday, and thus the filing deadline in moved to the next business day (Monday August 1, 2022) pursuant to code.

7.      Plaintiff asserts six causes of action in his Complaint against ABC: (1) Failure to Reimburse Employee Expenses; (2) Failure to Pay Minimum Wages; (3) (3) Failure to Pay Statutory Overtime; (4) Failure to Provide Compliant Rest Periods; (5) Waiting Time Penalties; and (6) Violation of the Unfair Competition Law. (Ex. A, Complaint.)

8.      The Complaint seeks to certify a class of "all individuals who are or have been employed as MERCHANDISERS ("California Employees who held the title Merchandiser or Display Stocker or similar positions")... by Defendant ... in California

2

during, at least, the four years prior to the filing of this action…." (Ex. A, Complaint, ¶ 1.)

9.      Accordingly, for purposes of the calculations in this Notice of Removal, the relevant time period starting "four (4) years preceding the filing of Plaintiff's Complaint" is from **April 19, 2018** until the present.

## III.    CLASS ACTION FAIRNESS ACT ("CAFA") REMOVAL

10.    This Court has original jurisdiction of this action under CAFA, codified in pertinent part at 28 U.S.C. Section 1332(d)(2).  As set forth below, this action is properly removable, pursuant to 28 U.S.C. Section 1441(a), in that this Court has original jurisdiction over the action, because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the action is a class action in which at least one class member is a citizen of a state different from that of a defendant.  28 U.S.C. §§ 1332(d)(2) & (d)(6).  Furthermore, the number of putative class members is greater than 100.  28 U.S.C. § 1332(d)(5)(B); Declaration of John Tynan in Support of Defendant's Notice of Removal ("Tynan Decl."), ¶ 8.

### A.    Plaintiff And Defendant ABC Are Diverse

11.    CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a state different from any named defendant.  28 U.S.C. § 1332(d)(2)(A).

#### 1.    Plaintiff Is A Citizen Of California

12.    For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Inc.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must … be domiciled in the state").  Residence is *prima facie* evidence of domicile.  *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is prima facie the domicile"); *see also Zavala v. Deutsche Bank Trust Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (where a plaintiff's complaint alleges he resides in California, "in the absence of evidence to the contrary,

3

[plaintiff] is a California citizen for diversity purposes"). Citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed") (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

13.     Plaintiff alleges that he resides in the State of California. (Ex. A, Complaint, ¶ 14) ("Plaintiff Curtis Higgins resided and was employed in Los Angeles, California…"). In his employment files, Plaintiff listed his home address as being in Altadena, California. (Tynan Decl., ¶ 4.) Plaintiff's intent to remain domiciled in California is further evident from the fact that he brought his lawsuit against Defendant in Los Angeles County Superior Court. Accordingly, Plaintiff is a citizen of California.

### 2.     ABC is Not a Citizen Of California

14.     Defendant ABC is not now, nor was at the time this action commenced, a citizen of the State of California. Rather, ABC is, and at all relevant times was, a citizen of Delaware, Massachusetts, and Texas. For diversity purposes, a "corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its 'principal place of business.'" *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009) (citing 28 U.S.C. 1332(c)(1)); *Castanon v. Int'l Paper Co.*, 2016 WL 589853, at *2 (C.D. Cal. February 11, 2016). Under the "nerve center" test, the principal place of business is the state where the "officers direct, control, and coordinate" the corporation's activities and where the corporation maintains its headquarters:

> We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's 'nerve center.' **And in practice it should normally be the place where the corporation maintains its headquarters — provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center.'**

4

*Hertz Corp. v. Friend,* 559 U.S. 77, 92-93 (2010).

15.     ABC is incorporated under the laws of the State of Delaware.  (Tynan Decl., ¶ 6.)

16.     ABC's principal place of business and headquarters is in Frisco, Texas. (Tynan Decl., ¶ 7.)  ABC's high-level officers direct, control, and coordinate corporate activities from Frisco, Texas.  (*Id.*)  Additionally, the majority of ABC's executive and administrative functions are directed from Texas, including corporate finance, accounting, purchasing, marketing, and information systems.  (*Id.*)  Accordingly, ABC was at the time this action was commenced, and remains today, citizens of the States of Delaware and Texas within the meaning of 28 U.S.C. section 1332(c)(1), and not citizens of the State of California.

17.     **Doe Defendants.**  Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332.  *Fristoe v. Reynolds Metals Co.,* 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see also Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant").  Indeed, the presence of "DOE" defendants in this case has no bearing on diversity of citizenship for removal.  Thus, the existence of "DOES 1-10" in the Complaint does not deprive this Court of jurisdiction.  *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied in CAFA removal).

**B.     There Are More Than 100 Potential Class Members**

18.     CAFA requires that the aggregated number of members of all proposed classes in a complaint be at least 100.  28 U.S.C. § 1332(d)(5)(B).

19.     The proposed class in the Complaint is defined as "all individuals who are or have been employed as MERCHANDISERS ("California Employees who held the title

1 | Merchandiser or Display Stocker or similar position")... by Defendant … in California
2 | during, at least, the four years prior to the filing of this action…" (Ex. A, Complaint, ¶ 1.)

3 |     20.   ABC employed approximately 1,897 Merchandisers or Display Stockers in
4 | the State of California from April 19, 2018, to the present.  (Tynan Decl., ¶ 8.)

5 | **C.    The Amount In Controversy Exceeds The Statutory Minimum**

6 |     21.   CAFA requires that the amount in controversy exceed $5,000,000, exclusive
7 | of interest and costs.  28 U.S.C. § 1332(d)(2).  Under CAFA, the claims of the individual
8 | members in a class action are aggregated to determine if the amount in controversy
9 | exceeds the sum or value of $5,000,000.  28 U.S.C. § 1332(d)(6).  In addition, Congress
10 | intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter
11 | in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the
12 | viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages,
13 | injunctive relief, or declaratory relief)."  Senate Judiciary Committee Report, S. Rep. No.
14 | 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40.  The Senate Judiciary
15 | Committee's Report on the final version of CAFA also makes clear that any doubts
16 | regarding the maintenance of interstate class actions in state or federal court should be
17 | resolved in favor of federal jurisdiction.  *Id*. at 42-43 ("if a federal court is uncertain
18 | about whether 'all matters in controversy' in a purposed class action 'do not in the
19 | aggregate exceed the sum or value of $5,000,000, the court should err in favor of
20 | exercising jurisdiction over the case . . . .  Overall, new section 1332(d) is intended to
21 | expand substantially federal court jurisdiction over class actions.  Its provision should be
22 | read broadly, with a strong preference that interstate class actions should be heard in a
23 | federal court if properly removed by any defendant.").

24 |     22.   **Preponderance Of The Evidence Standard.**  Plaintiff's Complaint does
25 | not allege the amount in controversy for the class he purports to represent, but rather
26 | alleges that he believes it is less than $5,000,000. (Ex. A, Complaint, ¶ 12).  Where a
27 | complaint does not allege a specific amount in damages, the removing defendant bears
28 | the burden of proving by a **preponderance of the evidence** that the amount in

6

controversy exceeds the statutory minimum.  In *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013), the U.S. Supreme Court held that the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard.  *Accord Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard").

23.    In 2011, Congress amended the federal removal statute to specify that, where the underlying state practice "permits recovery of damages in excess of the amount demanded . . . removal of the action is proper on the basis of an amount in controversy asserted . . . if the district court finds, by the *preponderance of the evidence*, that the amount in controversy exceeds the amount specified in section 1332(a)."  Pub.L. 112–63, December 7, 2011, 125 Stat. 758, § 103(b)(3)(C) (codified at 28 U.S.C. § 1446(c)(2) (emphasis added)); *accord Abrego*, 443 F.3d 676, 683 (9th Cir. 2006) ("Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met"); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) ("the complaint fails to allege a sufficiently specific total amount in controversy … we therefore apply the preponderance of the evidence burden of proof to the removing defendant").  The defendant must show that it is "more likely than not" that the jurisdictional threshold is met.  *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $50,000. Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount"); *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at *2 (E.D. Cal. July 14, 2010) (same).

24.    To satisfy this standard, the "defendants' notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional

7

threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 135 S.Ct. 547, 554 (2014); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("Because some remnants of our former antiremoval presumption seem to persist, we reaffirm three principles that apply in CAFA removal cases. First, a removing defendant's notice of removal 'need not contain evidentiary submissions' but **only plausible allegations** of the jurisdictional elements"; "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite ... amount'") (emphasis added).

25.     The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

26.     It is well-settled that "the court must accept as true plaintiff's allegations as plead in the Complaint and assume that plaintiff will prove liability and recover the damages alleged." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, *3 (E.D. Cal. May 1, 2007) (denying motion for remand of a class action for claims under the California Labor Code for missed meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting-time penalties).

27.     As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 702 (9th Cir. 2007) (holding that even if a plaintiff affirmatively pled damages less than the jurisdictional

minimum and did not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold).

28.    **The Court Should Assume A 100% Violation Rate Based On Plaintiff's Class-Wide Allegations.**  If a plaintiff asserts statutory violations, the court should assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations.  Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.  She did not.

*Muniz*, 2007 WL 1302504, at \*4 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also Wheatley v. MasterBrand Cabinets*, 2019 WL 688209, at \*5 (C.D. Cal. Feb. 19, 2019) ("Defendant and the Court must rely on assumptions regarding the rate of the alleged violations … Plaintiff does not allege that some putative class members were subject to distinct policies.  The Court therefore finds the assumption that uniform … policies were applied to **all** putative class members reasonable") (emphasis added); *Soratorio v. Tesoro Ref. and Mktg. Co., LLC*, 2017 WL 1520416, at \*3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate.  The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendant's 'common practice.'  It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Arreola v. The Finish Line*, 2014 WL 6982571, \*4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100

9

percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation").

29.    Numerous other District Courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate. *See Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate"); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *3-5 (C.D. Cal. June 22, 2017) (where complaint alleged "FMC engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice – or other similar language – and where the plaintiff offers no evidence rebutting this violation rate"); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate."); *Soratorio, LLC*, 2017 WL 1520416, at *3 ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.' It also alleges that Defendants had a

practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d. 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate – especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Jones v. Tween Brands, Inc.*, 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (using 100 percent violation rate for waiting-time penalties since the complaint did not limit the number or frequency of violations).

30.    The alleged amount in controversy in this class action, in the aggregate, exceeds $5,000,000. The Complaint seeks to certify a class of "all individuals who are or have been employed as MERCHANDISERS ("California Employees who held the title Merchandiser or Display Stocker or similar position")... by Defendant … in California during, at least, the four years prior to the filing of this action…" (Ex. A, Complaint, ¶ 1.) Accordingly, for purposes of the calculations in this Notice of Removal, the relevant time period starting "four (4) years preceding the filing of Plaintiff's Complaint" is from **April 19, 2018** until the present.

31.    During the relevant time period identified in the Complaint, ABC employed approximately 1,897 Merchandisers or Display Stockers in California, who worked a total of approximately 118,457 workweeks. (Tynan Decl., ¶¶ 8, 10.) The average rate of pay for non-exempt employees was approximately $18.16 per hour. (Tynan Decl., ¶ 9.)

32.    Plaintiff seeks to recover, on behalf of himself and the alleged class, unpaid wages and penalties for Defendant's alleged failure to reimburse for business expenses, failure to pay minimum and overtime wages, failure to provide rest breaks, failure to pay all wages due during employment, failure to pay all wages due upon resignation or termination of employment, failure to provide accurate and complete itemized wage statements, failure to maintain accurate employment records, and unfair business

11

practices.  (Ex. A, Complaint.)  Plaintiff also seeks attorneys' fees and costs.  (Ex. A, Complaint, Prayer for Relief.)

33.    As set forth below, the alleged amount in controversy implicated by the class-wide allegations exceeds $5,000,000.  **All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any admission of the truth of the facts alleged and assuming solely for purposes of this Notice of Removal that liability is established.**

34.    The calculations below show that the alleged amount in controversy exceeds $5,000,000, when considering the alleged class members, such as Plaintiff, and when considering just a few of the causes of action alleged in the Complaint.

### 1.    Rest Period Claims

35.    Plaintiff seeks payments for alleged denial of or missed or interrupted rest periods.  (Ex. A, Complaint, ¶¶ 76-80.)  Plaintiff claims that "Defendant did not [a]uthorize compliant rest breaks for Plaintiff and … CLASS MEMBERS.  Plaintiff and some CLASS MEMBERS were not completely free of duty and obligation….  Plaintiff on behalf of himself and the CLASS MEMBERS seek premium pay pursuant to § 226.7." (Ex. A, Complaint, ¶ 79-80.)

36.    The statute of limitations for recovery for rest period premium pay under California Labor Code section 226.7 pay is three years.  *Murphy v. Kenneth Cole Prods.*, *Inc.*, 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations.").  However, Plaintiff incorporates his rest break premiums pay as part of his unfair competition claim under Business and Professions Code section 17200, *et seq.* (Ex. A, Complaint, Cause of Action No. 6.)  Although ABC contend that rest break premium pay cannot be recovered under Business and Professions Code section 17200 (*Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1401 (2010)), according to the allegations of Plaintiff's Complaint, the four-year statute of limitations applies for

purposes of removal. Cal. Bus. & Prof. Code § 17208. Thus, for determining the amount in controversy, the four-year statute of limitations applies.

37.    Plaintiff is silent as to the specific amount of alleged rest periods he claims to have been denied, thereby precluding precise estimates of the amount in controversy. All that Plaintiff alleges, without any specificity, is that ABC "did not authorize or permit" Plaintiff and the Class Members compliant rest breaks …." (Ex. A, Complaint, ¶ 76-80.)

38.    ABC will conservatively assume that putative class members were not provided **two rest periods each workweek**. Plaintiff does not limit the number of violations alleged in his Complaint, nor has he offered any evidence that he or other putative class members missed less than two legally required rest breaks per week.

39.    As stated above, during the relevant time period identified in the Complaint, ABC employed approximately 1,897 Merchandisers or Display Stockers in California, who worked a total of approximately 118,457 workweeks. (Tynan Decl., ¶¶ 8, 10.) The average hourly rate of pay for these individuals is approximately $18.16. (Tynan Decl., ¶ 9.)

40.    Although Defendant denies that Plaintiff (or any putative class member) is entitled to any rest period premium payments, assuming **just two meal period violation per week** for each putative class member, the amount in controversy for the rest period claim alone would be approximately **$4,302,358.24** [(118,457 workweeks) × ($18.16 per hour) × (2 premium payments per week)]. Accordingly, the amount in controversy on Plaintiff's rest period claims when assuming just two rest period violation per week is approximately **$4,302,358.24**.

### 2.    Waiting Time Penalties

41.    Plaintiff's Complaint also alleges that "Defendant willfully failed to pay Plaintiff and similarly situated CLASS MEMBERS who are no longer employed by Defendant all compensation due upon termination of employment as required under Labor Code §§ 201 and 202." (Ex. A, Complaint, ¶ 74.)

13

42.    On these grounds, Plaintiff claims that Plaintiff and Class Members are entitled to waiting time penalties "[p]ursuant to Labor Code section 203…."  (Ex. A, Complaint, ¶ 74-75.)  Under California Labor Code § 203, a discharged employee is entitled to penalties of up to 30 days' pay at his or her regular pay.  *See* Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days").

43.    The statute of limitations period for California Labor Code § 203 penalties extends back only three years from the date of filing of the complaint, or April 19, 2019. *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1399 (2010) ("if an employer failed to timely pay final wages to an employee who quit or was fired, the employee would have had one year to sue for the section 203 penalties but, under Code of Civil Procedure section 338, subdivision (a) (Stats. 1935, ch. 581, § 1, p. 1673), three years to sue for the unpaid final wages giving rise to the penalty").

44.    It is also reasonable to assume that each employee waited over 30 days for payment of any allegedly unpaid wages.  *See Tajonar v. Echosphere*, LLC, 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding reasonable the defendant-employer's assumption that each employee was entitled to the maximum thirty-day penalty); *Byrd v. Masonite Corp.*, 2016 WL 2593912, at *3 (C.D. Cal. May 5, 2016) ("[I]t is not unreasonable for [defendant] to assume that each employee would be entitled to the maximum wage penalty – thirty days – for waiting time violations").

45.    During the relevant three-year time period for waiting time penalties, from April 19, 2019 to the present, there were a total of approximately 967 Merchandisers or Display Stockers in California who were terminated from employment with ABC in California.  (Tynan Decl., ¶ 11.)

46.    Although Defendant disputes liability,  a reasonable estimate of the amount in controversy for waiting time penalties is **$4,214,572.80** [$18.16/hour × 8 hours/day × 30 days × 967 former hourly employees].

### 3.    Failure to Pay Overtime Wages

47.    Plaintiff's Complaint alleges the ABC failed to pay Plaintiff and the CLASS MEMBERS overtime when it "knew or should have known of CLASS MEMBERS hours worked before their first stop and after their last stop." (Ex. A, Complaint, ¶ 67.) Plaintiff's Complaint also alleges that CLASS MEMBERS were required to "report to work a second time during a workday, after clocking out for the last stop"… and "were not paid for such time…) (Id. at ¶ 69).

48.    Plaintiff's Complaint also alleges that the putative class was not compensated for "hours worked associated with operating… vehicles, including time to fuel, maintain, and/or repair said vehicles." (Id. at ¶ 31(j)).

49.    Plaintiff alleges that "Plaintiffs and CLASS MEMBERS are entitled to recover in a civil action the unpaid balance of the full amount of overtime compensation owed to them, including interest thereon, plus reasonable attorney's fees and costs of suit."  (Id. at ¶ 70; see also ¶ 37 ("CLASS MEMBERS were not paid statutory minimum wages for all hours worked over 40 hours in a week, or 8 hours in a day… [thus] not paid statutory overtime wages.")).

50.    The statute of limitations for recovery for unpaid wages under California Labor Code §§ 510 and 1194 is three years.  Cal. Civ. Proc. Code § 338.  The limitations period is extended to four years when a plaintiff also seeks restitution for the Labor Code violations.  *Falk v. Children's Hosp. Los Angeles*, 237 Cal. App. 4th 1454, 1462, n.12 (2015) ("actions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation").  Accordingly, the proposed class period for Plaintiff's overtime claim is from April 19, 2018 until the present.

51.    As stated above, during the relevant time period identified in the action, ABC employed approximately 1,897 Merchandisers and Display Stockers in California

15

during the relevant time period, who worked a total of approximately 118,457 workweeks. (Tynan Decl., ¶¶ 8, 10.) The average hourly rate for the proposed putative class members in California during the relevant time period is $18.16 per hour, and is the hourly rate used for all calculations in this Notice of Removal. (*Id*. at ¶ 9.)

52.    For purposes of this calculation, ABC will use a very conservative estimate of only 10 minutes of unpaid overtime per workweek. Accordingly, a reasonable estimate of the amount in controversy for Plaintiff's unpaid overtime claim, at 10 minutes of unpaid overtime each week, is **$537,794.78** [($18.16/hour x 1.5 (overtime premium) ÷ 6 (10 minutes per week) x 118,457 workweeks)].

53.    Although ABC denies Plaintiff's allegations, these are *very* conservative estimations for purposes of calculating the amount in controversy under CAFA removal. Indeed, the Ninth Circuit and numerous district courts have held, an estimate of at least 30 minutes per class member per week (i.e., three times Defendants' assumption) is appropriate in light of Plaintiff's allegations. *See, e.g.*, *Arias*, 936 F.3d at 927 (holding that "Marriott's assumptions are plausible" where it assumed "30 minutes of unpaid overtime per week"); *Gant v. ALDI, Inc.*, 2020 WL 1329909, at *5 (C.D. Cal. March 20, 2020) ("For the unpaid overtime claim, Defendants used a violation rate of one hour of unpaid overtime per week. This assumption is reasonable in light of the Complaint, whose allegations lack specificity"); *Wheatley*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) (finding an estimate of one hour per class member per week appropriate where Plaintiff alleged a "a pattern and practice" of overtime violations); *Stanley v. Distribution Alternatives, Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (denying motion to remand where, "[f]or the at-controversy overtime wages, [defendant] assumes that each of the class members worked two hours of overtime each week during the class peri-od"); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (finding appropriate the assumption that each class member is owed one hour of overtime compensation per week where the complaint alleged overtime violations occurred "regularly"); *Oda v. Gucci Am. Inc.*, 2015 WL 93335 at *4 (C.D. Cal. Jan. 7, 2015)

16

(finding reasonable an assumed violation rate of one hour of overtime per week where the plaintiffs' asserted the defendant "sometimes" failed to pay over-time); *Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, at *7 (C.D. Cal. May 9, 2011) (finding reasonable the defendant's estimate of one hour of unpaid overtime per week for each class member where the complaint alleged "consistent" unpaid overtime work).

Thus, a 10-minute estimate is extremely conservative for purposes of calculating the amount in controversy under CAFA removal.

### 4.    Approximate Aggregate Amount In Controversy

54.    Although ABC denies Plaintiff's allegations that he or the putative class are entitled to any relief for the above-mentioned claims, based on the forgoing calculations, the aggregate amount in controversy for the putative class for all asserted claims, exclusive of attorneys' fees, is approximately **$9,054,725.82**, calculated as follows:

| **$4,302,358.24** | Rest Period Claim (Assuming Just 2 Rest Period Violation Per Workweek) |
| **$4,214,572.80** | Waiting Time Penalties |
| **$537,794.78** | Unpaid Overtime Claim |

55.    The figures above do not take into account Plaintiff's claim for alleged unpaid minimum wages, unpaid reporting time, or reimbursement of business expenses.

### 5.    Attorneys' Fees

56.    Plaintiff also seeks attorneys' fees. (Ex. A, Complaint, Prayer for Relief.) Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy").

17

57.     A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy. *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (*citing Brady*, 243 F. Supp. 2d at 1010-11); *Muniz*, 2007 WL 1302504 at *4 (attorneys' fees appropriately included in determining amount in controversy).

58.     In a recent decision, the Ninth Circuit held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior to removal – for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal).  Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious."); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403 (C.D. Cal. May 9, 2018) (holding that "unaccrued post-removal attorneys' fees can be factored into the amount in controversy" for CAFA jurisdiction).

59.     Indeed, the Ninth Circuit again very recently explicitly confirmed that "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy," including in the context of determining CAFA jurisdiction and as a "principle[] that appl[ies] in CAFA removal cases." *Arias*, 936 F.3d at 922.

60.     In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *See, e.g., Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019)

18

(finding that an estimate of attorney's fees of 25% reasonable); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("[T]the 25% benchmark provides a non-speculative guidepost for assessing jurisdiction."); *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667 at *78-84 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920 at *16-18 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25 percent of the common fund).

61.     Even under the conservative benchmark of 25 percent of the total amount in controversy for Plaintiff's claims, attorneys' fees alone would be upward of **$2,263,681.46** in this case [$9,054,725.82 amount in controversy × 0.25].

62.     Although ABC denies Plaintiff's allegations that he or the putative class are entitled to any relief, based on Plaintiff's allegations and prayer for relief, and a conservative estimate based on those allegations, the total amount in controversy is at least **$11,318,407.28**, including attorneys' fees. This total amount in controversy far exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

63.     Accordingly, because diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action

pursuant to 28 U.S.C. section 1332(d)(2).  This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. section 1441(a).

64.    To the extent that Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. section 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. section 1367(a).

## IV.    VENUE

65.    Venue lies in the United States District Court for the Central District of California, Western Division, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(a).  This action originally was brought in Los Angeles County, Superior Court of the State of California, which is located within the Central District of California, Western Division.  28 U.S.C. § 84(a).  Therefore, venue is proper because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

66.    A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Los Angeles County Superior Court of the State of California as required under 28 U.S.C. § 1446(d).

## V.    NOTICE TO STATE COURT AND TO PLAINTIFF

67.    ABC will give prompt notice of the filing of this Notice of Removal to Plaintiff and to the Clerk of the Superior Court of the State of California in the County of Los Angeles.  As noted above, the Notice of Removal is concurrently being served on all parties.

## VI.    PRAYER FOR REMOVAL

68.    WHEREFORE, ABC prays that this civil action be removed from Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California, Western Division.

85169776v.2

1

2

DATED:  August 1, 2022

3

Respectfully submitted,

SEYFARTH SHAW LLP

4

5

6

By:  _/s/ Laura E. Heyne_____
Daniel C. Whang
Laura E. Heyne
Attorneys for Defendant
THE AMERICAN BOTTLING COMPANY

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT
85169776v.2

# EXHIBIT A

Electronically FILED by Superior Court of California, County of Los Angeles on 04/19/2022 02:47 PM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Covarrubias,Deputy Clerk

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY *(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:** THE AMERICAN BOTTLING COMPANY;
***(AVISO AL DEMANDADO):*** and DOES 1 through 10

**YOU ARE BEING SUED BY PLAINTIFF:** Curtis Higgins, an individual
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Superior Court of California, County of Los Angeles 111 North Hill Street Los Angeles, California 90012 | CASE NUMBER: *(Número del Caso):* 22STCV13127 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: I. BENJAMIN BLADY
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
BLADY WORKFORCE LAW GROUP, APC
5757 Wilshire Blvd. Suite 535, LOS ANGELES, CA 90036

Sherri R. Carter Executive Officer / Clerk of Court
3329331352

| DATE: *(Fecha):* 04/19/2022 | Clerk, by *(Secretario)* J. Covarrubias | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):*  The American Bottling Company

under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)

       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
Westlaw Doc & Form Builder

**CM-010**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):* <br> I. BENJAMIN BLADY      SBN: 162470 <br> BLADY WORKFORCE LAW GROUP, APC <br> 5757 Wilshire Blvd. Suite 535, LOS ANGELES, CA 90036 <br> TELEPHONE NO.: 3329331352    FAX NO. *(Optional)*: 3239331353 <br> E-MAIL ADDRESS: bblady@bwlawgroup.com <br> ATTORNEY FOR *(Name):* Curtis HIggins | **FOR COURT USE ONLY** |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME: Higgins v. The American Bottling Company, et al.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | | **CASE NUMBER:** 22STCV13127 |
|---|---|---|---|---|
| [X] Unlimited <br> (Amount <br> demanded <br> exceeds $25,000) | [ ] Limited <br> (Amount <br> demanded is <br> $25,000 or less) | [ ] Counter    [ ] Joinder <br> Filed with first appearance by defendant <br> (Cal. Rules of Court, rule 3.402) | | **JUDGE:** <br> **DEPT.:** |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [X] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [X] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [X] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [X] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [X] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify):* Six
5. This case [X] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 19, 2022

I. BENJAMIN BLADY
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use <br> Judicial Council of California <br> CM-010 [Rev. September 1, 2021] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; <br> Cal. Standards of Judicial Administration, std. 3.10 <br> www.courts.ca.gov |

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

| SHORT TITLE: Higgins v. The American Bottling Company, et al. | CASE NUMBER 22STCV13127 |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 1, 11 |
| | | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: Higgins v. The American Bottling Company, et al. | CASE NUMBER |
|---|---|

| **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|
| Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1, 2, 3 |
| Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1, 2, 3 |
| Fraud (16) | ☐ A6013 Fraud (no contract) | 1, 2, 3 |
| Professional Negligence (25) | ☐ A6017 Legal Malpractice | 1, 2, 3 |
| | ☐ A6050 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1, 2, 3 |
| Other Employment (15) | ☒ A6024 Other Employment Complaint Case | 1, 2, 3 |
| | ☐ A6109 Labor Commissioner Appeals | 10 |
| Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | ☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | ☐ A6019 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | ☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff | 5, 6, 11 |
| | ☐ A6012 Other Promissory Note/Collections Case | 5, 11 |
| | ☐ A6034 Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1, 2, 5, 8 |
| Other Contract (37) | ☐ A6009 Contractual Fraud | 1, 2, 3, 5 |
| | ☐ A6031 Tortious Interference | 1, 2, 3, 5 |
| | ☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation        Number of parcels_____ | 2, 6 |
| Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2, 6 |
| Other Real Property (26) | ☐ A6018 Mortgage Foreclosure | 2, 6 |
| | ☐ A6032 Quiet Title | 2, 6 |
| | ☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2, 6, 11 |

- Non-Personal Injury/ Property Damage/Wrongful Death Tort
- Employment
- Contract
- Real Property
- Unlawful Detainer

| SHORT TITLE: Higgins v. The American Bottling Company, et al. | CASE NUMBER |
|---|---|

| A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|
| **Judicial Review** | | |
| Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | | |
| Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | | |
| Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | ☐ A6160  Abstract of Judgment | 2, 6 |
| | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | | |
| RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | | |
| Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment With Damages | 2, 3, 9 |
| | ☐ A6123  Workplace Harassment With Damages | 2, 3, 9 |
| | ☐ A6124  Elder/Dependent Adult Abuse Case With Damages | 2, 3, 9 |
| | ☐ A6190  Election Contest | 2 |
| | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | ☐ A6100  Other Civil Petition | 2, 9 |

| SHORT TITLE: Higgins v. The American Bottling Company, et al. | CASE NUMBER |
|---|---|
| | . |

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected.  Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: | ADDRESS: |
|---|---|
| ☒ 1. ☒ 2. ☒ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7.  ☐ 8. ☐ 9. ☐ 10. ☐ 11. | 1166 Arroyo Avenue |

| CITY: | STATE: | ZIP CODE: |
|---|---|---|
| San Fernando | CA | 91340 |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the <u>Central</u>_____ District of Los Angeles the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: <u>April 19, 2022</u>_____

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

# Superior Court of California, County of Los Angeles

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

### What is ADR?

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR

- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR

- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

LASC CIV 271 Rev. 04/21
For Mandatory Use

## How to Arrange Mediation in Los Angeles County

Mediation for **civil cases** is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties in an active civil case agree to mediation, they may contact these organizations
   to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected
   cases).

   - **ADR Services, Inc.** Case Manager Elizabeth Sanchez, elizabeth@adrservices.com
     (949) 863-9800
   - **JAMS, Inc.** Assistant Manager Reggie Joseph, RJoseph@jamsadr.com (310) 309-6209
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org
     (833) 476-9145

**These organizations cannot accept every case and they may decline cases at their discretion.** They may
offer online mediation by video conference for cases they accept. Before contacting these organizations,
review important information and FAQs at www.lacourt.org/ADR.Res.List

**NOTE: The Civil Mediation Vendor Resource List program does not accept family law, probate or small
claims cases.**

b. **Los Angeles County Dispute Resolution Programs**
   https://hrc.lacounty.gov/wp-content/uploads/2020/05/DRP-Fact-Sheet-23October19-Current-as-of-October-2019-1.pdf

   Day of trial mediation programs have been paused until further notice.

   **Online Dispute Resolution (ODR).** Parties in small claims and unlawful detainer (eviction) cases
   should carefully review the Notice and other information they may receive about (ODR)
   requirements for their case.

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration**: Arbitration is less formal than trial, but like trial, the parties present evidence and
arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's
decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a
trial after the arbitrator's decision. For more information about arbitration, visit
http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC)**: MSCs are ordered by the Court and are often held close
to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement
officer who does not make a decision but who instead assists the parties in evaluating the strengths and
weaknesses of the case and in negotiating a settlement. For information about the Court's MSC
programs for civil cases, visit http://www.lacourt.org/division/civil/C10047.aspx

Los Angeles Superior Court ADR website: http://www.lacourt.org/division/civil/C10109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

MAY 03 2019

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
Rizalinda Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

IN RE LOS ANGELES SUPERIOR COURT )    FIRST AMENDED GENERAL ORDER
— MANDATORY ELECTRONIC FILING )
FOR CIVIL )
)
)
)
_____ )

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) DEFINITIONS

   a) **"Bookmark"** A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

   b) **"Efiling Portal"** The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

   c) **"Electronic Envelope"** A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

   d) **"Electronic Filing"** Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

1

e) **"Electronic Filing Service Provider"**   An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court.  (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"**   For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"**   An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"**   A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

a) Trial Court Records

Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format.  Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

b) Represented Litigants

Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

c) Public Notice

The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs.  Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

2019-GEN-014-00

d) Documents in Related Cases

Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) **EXEMPT LITIGANTS**

a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) **EXEMPT FILINGS**

a) The following documents shall not be filed electronically:

   i)    Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

   ii)   Bonds/Undertaking documents;

   iii)  Trial and Evidentiary Hearing Exhibits

   iv)   Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

   v)    Documents submitted conditionally under seal. The actual motion or application shall be electronically filed. A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

b) Lodgments

Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

3

FIRST AMENDED GENERAL ORDER RE MANDATORY ELECTRONIC FILING FOR CIVIL

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

a) Electronic documents must be electronically filed in PDF, text searchable format **when** technologically feasible without impairment of the document's image.

b) The table of contents for any filing must be bookmarked.

c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

d) Attachments to primary documents must be bookmarked. Examples include, but are not limited to, the following:

   i)   Depositions;

   ii)   Declarations;

   iii)   Exhibits (including exhibits to declarations);

   iv)   Transcripts (including excerpts within transcripts);

   v)   Points and Authorities;

   vi)   Citations; and

   vii)  Supporting Briefs.

e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

f) Accompanying Documents

Each document acompanying a single pleading must be electronically filed as a **separate** digital PDF document.

g) Multiple Documents

Multiple documents relating to one case can be uploaded in one envelope transaction.

h) Writs and Abstracts

Writs and Abstracts must be submitted as a separate electronic envelope.

i) Sealed Documents

If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) Redaction

Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

a) Filed Date

i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing. Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted.    (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of: (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day before the ex parte hearing.

b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the day of the ex parte hearing. A printed courtesy copy of any opposition to an ex parte application must be provided to the court the day of the ex parte hearing.

9) PRINTED COURTESY COPIES

a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled. If the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom by 10:00 a.m. the next business day.

b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of electronic submission) is required for the following documents:

    i)   Any printed document required pursuant to a Standing or General Order;

    ii)  Pleadings and motions (including attachments such as declarations and exhibits) of 26 pages or more;

    iii)  Pleadings and motions that include points and authorities;

    iv)  Demurrers;

    v)   Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

    vi)  Motions for Summary Judgment/Adjudication; and

    vii)  Motions to Compel Further Discovery.

c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of additional documents. Courtroom specific courtesy copy guidelines can be found at www.lacourt.org on the Civil webpage under "Courtroom Information."

10) WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

a) Fees and costs associated with electronic filing must be waived for any litigant who has received a fee waiver. (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. § 1010.6(d)(2).)

b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure section 1010.6, subdivision (b)(6), and California Rules of Court, rule 2.252(f), may be electronically filed in any authorized action or proceeding.

1    11)  SIGNATURES ON ELECTRONIC FILING

2          For purposes of this General Order, all electronic filings must be in compliance with California

3    Rules of Court, rule 2.257.  This General Order applies to documents filed within the Civil

4    Division of the Los Angeles County Superior Court.

5

6          This First Amended General Order supersedes any previous order related to electronic filing,

7    and is effective immediately, and is to remain in effect until otherwise ordered by the Civil

8    Supervising Judge and/or Presiding Judge.

9

10   DATED:  May 3, 2019                        

11                                                                        KEVIN C. BRAZILE

                                                                          Presiding Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED GENERAL ORDER RE MANDATORY ELECTRONIC FILING FOR CIVIL

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**04/19/2022**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ J. Covarrubias _____ Deputy |
| NOTICE OF CASE ASSIGNMENT<br><br>UNLIMITED CIVIL CASE | |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>22STCV13127 |

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Carolyn B. Kuhl | 12 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 04/20/2022
(Date)

LACIV 190 (Rev 6/18)
LASC Approved 05/06

Sherri R. Carter, Executive Officer / Clerk of Court

By J. Covarrubias _____, Deputy Clerk

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| | | |
|---|---|---|
| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
| TELEPHONE NO.:                    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| | |
|---|---|
| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
   <span>(INSERT DATE)</span>  <span>(INSERT DATE)</span>
   complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____    ➤  _____
    (TYPE OR PRINT NAME)                      (ATTORNEY FOR PLAINTIFF)

Date:

_____    ➤  _____
    (TYPE OR PRINT NAME)                      (ATTORNEY FOR DEFENDANT)

Date:

_____    ➤  _____
    (TYPE OR PRINT NAME)                      (ATTORNEY FOR DEFENDANT)

Date:

_____    ➤  _____
    (TYPE OR PRINT NAME)                      (ATTORNEY FOR DEFENDANT)

Date:

_____    ➤  _____
    (TYPE OR PRINT NAME)                      (ATTORNEY FOR _____)

Date:

_____    ➤  _____
    (TYPE OR PRINT NAME)                      (ATTORNEY FOR _____)

Date:

_____    ➤  _____
    (TYPE OR PRINT NAME)                      (ATTORNEY FOR _____)

| Print | Save | | Clear |

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:       FAX NO. (Optional): <br> E-MAIL ADDRESS (Optional): <br> ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – DISCOVERY RESOLUTION** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

**STIPULATION – DISCOVERY RESOLUTION**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

      iii.    Be filed within two (2) court days of receipt of the Request; and

      iv.    Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

   c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

   d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

   e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

**STIPULATION – DISCOVERY RESOLUTION**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

[ Print ]    [ Save ]                    [ Clear ]

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

Page 3 of 3

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| | | |

TELEPHONE NO.:                FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

## INFORMAL DISCOVERY CONFERENCE
(pursuant to the Discovery Resolution Stipulation of the parties)



Print    Save    Clear

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION AND ORDER – MOTIONS IN LIMINE** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

**STIPULATION AND ORDER – MOTIONS IN LIMINE**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

## The following parties stipulate:

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER

[ Print ]    [ Save ]                                    [ Clear ]

**FILED**

LOS ANGELES SUPERIOR COURT

MAY 1 1 2011

JOHN A. CLARKE, CLERK

*N. Navarro*

BY NANCY NAVARRO, DEPUTY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

General Order Re
Use of Voluntary Efficient Litigation
Stipulations

)
)
)
)
)
)

ORDER PURSUANT TO CCP 1054(a),
EXTENDING TIME TO RESPOND BY
30 DAYS WHEN PARTIES AGREE
TO EARLY ORGANIZATIONAL
MEETING STIPULATION

Whereas the Los Angeles Superior Court and the Executive Committee of the

Litigation Section of the Los Angeles County Bar Association have cooperated in

drafting "Voluntary Efficient Litigation Stipulations" and in proposing the stipulations for

use in general jurisdiction civil litigation in Los Angeles County;

Whereas the Los Angeles County Bar Association Litigation Section; the Los

Angeles County Bar Association Labor and Employment Law Section; the Consumer

Attorneys Association of Los Angeles; the Association of Southern California Defense

Counsel; the Association of Business Trial Lawyers of Los Angeles; and the California

Employment Lawyers Association all "endorse the goal of promoting efficiency in

litigation, and ask that counsel consider using these stipulations as a voluntary way to

promote communications and procedures among counsel and with the court to fairly

resolve issues in their cases;"

-1-

ORDER PURSUANT TO CCP 1054(a)

Whereas the Early Organizational Meeting Stipulation is intended to encourage cooperation among the parties at an early stage in litigation in order to achieve litigation efficiencies;

Whereas it is intended that use of the Early Organizational Meeting Stipulation will promote economic case resolution and judicial efficiency;

Whereas, in order to promote a meaningful discussion of pleading issues at the Early Organizational Meeting and potentially to reduce the need for motions to challenge the pleadings, it is necessary to allow additional time to conduct the Early Organizational Meeting before the time to respond to a complaint or cross complaint has expired;

Whereas Code of Civil Procedure section 1054(a) allows a judge of the court in which an action is pending to extend for not more than 30 days the time to respond to a pleading "upon good cause shown";

Now, therefore, this Court hereby finds that there is good cause to extend for 30 days the time to respond to a complaint or to a cross complaint in any action in which the parties have entered into the Early Organizational Meeting Stipulation.  This finding of good cause is based on the anticipated judicial efficiency and benefits of economic case resolution that the Early Organizational Meeting Stipulation is intended to promote.

IT IS HEREBY ORDERED that, in any case in which the parties have entered into an Early Organizational Meeting Stipulation, the time for a defending party to respond to a complaint or cross complaint shall be extended by the 30 days permitted

-2-

ORDER PURSUANT TO CCP 1054(a)

by Code of Civil Procedure section 1054(a) without further need of a specific court

order.

DATED: _May 11, 2011_

Carolyn B. Kuhl, Supervising Judge of the
Civil Departments, Los Angeles Superior Court

-3-

ORDER PURSUANT TO CCP 1054(a)

Electronically FILED by Superior Court of California, County of Los Angeles on 04/19/2022 01:48 PM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Covarrubias,Deputy Clerk

I. Benjamin Blady, Esq. – State Bar No. 162470
BLADY WORKFORCE LAW GROUP, LLP
5757 Wilshire Boulevard, Suite 535
Los Angeles, California 90036
Telephone:    (323) 933-1352
Facsimile:    (323) 933-1353
E-mail:  bblady@bwlawgroup.com

Attorneys for Plaintiff
Curtis Higgins, for himself, on behalf of all others similarly situated,
and on behalf of the general public

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| Curtis Higgins, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> THE AMERICAN BOTTLING COMPANY; and DOES 1 through 10, <br><br> Defendants. | CASE NO.: 22STCV13127 <br><br> CASE FILED:  APRIL 19, 2022 <br><br> **[CLASS ACTION]** <br><br> **CLASS ACTION COMPLAINT FOR:** <br><br> **(1) FAILURE TO REIMBURSE EMPLOYEE EXPENSES (LABOR CODE 2802);** <br> **(2) FAILURE TO PAY MINIMUM STATUTORY WAGES FOR ALL HOURS WORKED (LABOR CODE § 500, 510, 1194, 1194.2);** <br> **(3) FAILURE TO PAY STATUTORY OVERTIME WAGES FOR ALL HOURS WORKED (LABOR CODE § 500, 510, 1194, 1194.2);** <br> **(4) FAILURE TO PROVIDE COMPLAINT REST PERIODS;** <br> **(5) WAITING TIME PENALTIES (LABOR CODE 201-203); AND** <br> **(6) UCL VIOLATIONS (BUS. & PROF. CODE 17200-17208)** <br><br> **DEMAND FOR JURY TRIAL** |

1    Plaintiff alleges on behalf of himself and all those similarly situated, as follows:

2                              **OVERVIEW OF CLAIMS**

3    1.    This action alleges violation of California wage and hour laws, which are to be

4    construed to promote employee protection. In this action, Plaintiff Curtis Higggins seeks to

5    represent all individuals who are or have been employed as MERCHANDISERS (California

6    employees who held the title of Merchandiser or Display Stocker or similar position) in full-time

7    five day a week schedule positions by Defendant The American Bottling Company and/or its

8    parent, subsidiaries or affiliated companies (hereinafter "Defendant") in California during, at least,

9    the four years prior to the filing of this action (hereafter CLASS MEMBERS), including, without

10   limitation, as such four-year period may have been extended and/or tolled by any prior filed class

11   or representative actions.

12   2.    This is a class action, and/or representative action, on behalf of MERCHANDISERS

13   for:

14   a.    Reimbursement for mileage related expenses, and related relief, including under

15   California Labor Code §§ 218.6, 221, 223, 500, et seq., 1194, 2802, Code of Civil Procedure

16   §1021.5, and Business and Professions Code § 17202, and 17203, et seq., on behalf of Plaintiff and

17   all other individuals who are or have been employed as MERCHANDISERS. Plaintiff, on behalf of

18   himself and CLASS MEMBERS, seeks reimbursement for work related employee expenses for

19   which they have not been fully reimbursed, as well as injunctive relief, penalty enforcement and

20   restitution and/or disgorgement of all unjust enrichment that Defendant has or may have obtained

21   from Defendant's failure to fully reimburse the expenses incurred by Plaintiffs and CLASS

22   MEMBERS.

23   b.    Payment for unpaid hours worked before CLASS MEMBERS first stop on their

24   respective merchandising routes and unpaid hours worked after their last stop, including travel

25   time, time to sign into applications, time to download information, time to communicate, and travel

26   time. Plaintiff contends that all CLASS MEMBERS were instructed to record time worked that

27   excluded hours worked, including, but not limited to, hours worked (1) before the

28   MERCHANDISER'S first stop on a route, and/or (2) after the MERCHANDISER'S last stop on a

29   route. Labor Code § 1192, 1194. Defendant also knew or should have known such hours work was

30   not recorded.

31

32

1       c.     Payment for unpaid hours worked on days CLASS MEMBERS were not scheduled

2 to work but performed hours worked. Plaintiff alleges CLASS MEMBERS were also not permitted

3 to record hours worked on days CLASS MEMBERS were not scheduled to work but were suffered

4 or permitted to work. Labor Code § 1192, 1194.

5       d.     Payment of premium pay for unprovided rest periods for CLASS MEMBERS,

6 including those who, for example, were (1) informed rest breaks should be on premises, (2) were

7 not scheduled for compliant rest breaks that accounted for routes, and/or (3) were not provided

8 suitable resting facilities. Labor Code § 226.7.

9       e.     Failure to pay all wages due at termination of employment. Labor Code § 203.

10       f.     Restitution, injunctive, declaratory, penalty enforcement, notice and other relief

11 under Business and Professions Code § 17200, et seq.

12       3.     The CLASS PERIOD is designated as the period from four years prior to the filing

13 of this action through the trial date, as further extended by any applicable tolling period. Plaintiff is

14 also informed and believes that on or more POLICIES (meaning policy or practice) may have been

15 changed before the filing of this Complaint reducing the potential CLASS MEMBERS.

16 Defendant's violations of California's wage and hour laws and unfair competition laws, as

17 described more fully below, have otherwise been ongoing for at least the past four years, and

18 Plaintiff alleges some are continuing at present. Plaintiff alleges, in part, and without limitation,

19 that the CLASS PERIOD is extended during the time any other class action encompassing similar

20 and/or same claims was pending.

21       4.     Plaintiff alleges about 50 similarly situated CLASS MEMBERS are, and throughout

22 the CLASS PERIOD have been, employed by Defendant, including being engaged, suffered or

23 permitted to work under similar POLICIES. Plaintiffs and CLASS MEMBERS employed were

24 required to own and use personal automobiles to travel to and from and to service Defendant's

25 accounts in Defendant's trade or business. Defendant expected and required CLASS MEMBERS to

26 own and drive their own personal automobiles to and from, and between, the account locations in

27 the scope of employment. Defendant also directed, or suffered and permitted, CLASS MEMBERS

28 before or after traveling during a workday.

29       5.     Plaintiff and similarly situated CLASS MEMBERS were expected by Defendant to

30 pay, and have personally paid for, some unreimbursed expenses associated with the operation of

31 their cars in the scope of their employment and for the benefit of Defendant that were not

32 reimbursed by Defendant. Such travel related expenses in the scope of employment include, inter

1 | alia, some mileage, gasoline and oil, fuel, maintenance, repairs, insurance, registration,

2 | depreciation, and other automobile-related expenses ("motor vehicle expenses") which were not

3 | fully reimbursed. Defendant's POLICY was to not reimburse its CLASS MEMBERS for all of

4 | their actual out-of-pocket or other expenses incurred in the scope of their employment and/or all

5 | necessary (i.e., reasonable) expenditures or losses in direct consequence of the discharge of his or

6 | her duties and/or in obedience to the directions of Defendant.

7 |      6.     Defendant has willfully failed and refused to reimburse Plaintiff and other present

8 | and former CLASS MEMBERS fully, or at all, as required by Labor Code § 2802, for some motor

9 | vehicle expenses incurred in the scope of employment, including those incurred and/or necessarily

10 | and/or reasonably incurred before the first stop and/or after the last stop on their respective

11 | merchandising routes and/or work routes.

12 |      7.     Defendant has willfully failed and refused to pay Plaintiff and other CLASS

13 | MEMBERS fully, or at all, for some statutory wages.

14 |      8.     Defendant has willfully failed and refused to timely pay Plaintiff and CLASS

15 | MEMBERS for some hours worked. Labor Code §§ 203, 204, 204b and 215.

16 |      9.     Defendant has directly or indirectly required repayment of some wages, withheld

17 | some wages, or paid some wages at less a statutorily mandated wage. Labor Code §§ 221, 223

18 | and/or 225.

19 |      10.    Defendant failed to provide MERCHANDISERS with some legally compliant rest

20 | breaks, including providing for suitable rest areas.

21 |      JURISDICTION

22 |      11.    Plaintiff, as well as all CLASS MEMBERS, are current and/or former residents of

23 | the State of California.

24 |      12.    On information and belief, Plaintiff alleges that the class is less than 100 employees.

25 | Plaintiff alleges that the amount in controversy does not exceed $5,000,000. Plaintiff also alleges

26 | all of the CLASS MEMBERS were employed in California, and more than two-thirds are citizens

27 | of California. Plaintiff also alleges that DOES 1-10 are persons who reside in California and have

28 | significant liability for the unfair, fraudulent and unlawful acts.

29 |      **VENUE**

30 |      13.    Venue as to Defendants is proper in the County of Los Angeles, pursuant to Code of

31 | Civil Procedure § 395.5. Plaintiff was employed and/or performed work as a CLASS MEMBER

32 | during the class period by the Defendant in the County of Los Angeles, and many of the acts

1   alleged herein occurred in the County of Los Angeles, and the County of Los Angeles was the

2   county where Defendant employed Plaintiff and where the employment was to be performed, at

3   least in part, and the county in which the obligation and/or liability arose, at least in partVenue is

4   therefore proper in Los Angeles County. The unlawful acts alleged herein had a direct effect on

5   Plaintiffs and other CLASS MEMBERS within the County of Los Angeles, some of whom are

6   employed and conduct Defendant's trade and or business within the County of Los Angeles.

7                               **PARTIES**

8       14.    Plaintiff Curtis Higgins resided and was employed in Los Angeles, California during

9   the relevant CLASS PERIOD. Defendant employed Plaintiff as a Merchandiser. During that time

10   Plaintiff was subject to Defendant's POLICIES set forth herein.

11       15.    On information and belief, Defendant The American Bottling Company is a

12   Delaware Corporation headquartered in Texas. On information and belief, its principal place of

13   business is located at Frisco Texas and/or Plano Texas. Defendant was the Plaintiffs and CLASS

14   MEMBERs employer and/or co-employer for all relevant time periods. The policies and practices

15   complained of herein were formulated, implemented, and maintained, in whole or in substantial

16   part, either at that address. One information and belief, DEFENDANTS DOES 1 TO 10 at

17   Defendant's California branches were also responsible. Plaintiff alleges that Defendant applied the

18   same policies and practices at least at Plaintiff's branch in San Fernando. Ruben Ortega, a

19   California person, may have significant liability for POLICIES at the San Fernando branch.

20       16.    All of Plaintiff's and CLASS MEMBERS claims stated herein are asserted against

21   Defendant and any of its predecessors, successors, and/or assigns that do, or have done, business,

22   and that employs or has employed, or has jointly employed, or has indirectly employed CLASS

23   MEMBERS in California during the CLASS PERIOD.

24                     **FACTUAL BACKGROUND**

25       17.    Defendant operates and, at all times during the CLASS PERIOD, has done business

26   throughout California. Defendant, in the course of operating its business in California during the

27   Class Period, employs or has employed Plaintiffs, CLASS MEMBERS. One location was at its

28   San Fernando Branch.

29       18.    Since at least four years prior to the filing of this action, Defendant has maintained

30   POLICIES relating to the reimbursement of automobile travel and other expenses to the CLASS

31   MEMBERS, and has maintained POLICIES relating to the payment of wages, which deny, or may

32   have denied, required reimbursement and compensation/wages to CLASS MEMBERS.

19.    Pursuant to Defendant's POLICIES, CLASS MEMBERS are required, in part, to own and use their personal vehicles to travel to and from and between the stores that Defendant merchandises ("merchandises" meaning Defendant's provision of product related services to various stores [e.g., CVS, Walgreens, Vons and Smart &Final] such as stocking, display, promotion, and merchandising of Defendants' beverages and products)  CLASS MEMBERS are often subject to the control of the employer before the first stop and after the last stop. CLASS MEMBERS are often suffered or permitted to perform hours worked without required compensation before the first stop and after the last stop. CLASS MEMBERS are not provided compliant rest breaks.

**Travel Related Expense Policies and Practices Often Result in Non-Reimbursment**

20.    Plaintiff was employed at the San Fernando Branch. Defendant's expense-related POLICIES require, and/or with Defendant's knowledge thereof permit, CLASS MEMBERS to pay for certain unreimbursed automobile related expenses incurred in the scope of employment, or as necessary expenditures in direct consequence of discharging their duties on behalf of Defendant, or as expenditures incurred in obedience to the directions of Defendant.  Plaintiff is informed that Defendant's POLICY is to not reimburse some CLASS MEMBERS for all necessary/reasonable expenses incurred in driving required personnel vehicles for the benefit of Defendant and/or as required by Defendant and/or for Defendants' benefit.

21.    Here, Defendant required and require the Plaintiff and some CLASS MEMBERS to drive to and from the workplace so that the vehicle is available for the employer's trade or business, and, consequently, amongst other matters, the Plaintiff and other CLASS MEMBERS could not travel to work on a motorcycle, bicycle, carpool, public transport, or other self-directed and self-selected mode of transportation.  Resultantly, the Plaintiff and some of the CLASS MEMBERS' travel to and from work is and was within the scope of employment and/or constituted necessary discharge of duties to Defendant and/or constituted directions by Defendant and/or was subject to Defendants' control and/or was suffered and permitted work. Accordingly, Defendant directs, controls, expects and/or requires some CLASS MEMBERS in the scope of employment to have a valid driver's license, to own their vehicle, to have acceptable insurance, to maintain said vehicles, and/or to use their own vehicle to travel to, from and between Defendant's client accounts in the trade or business, including at times to locations outside of the city, or county, where CLASS MEMBERS live.

22.     Furthermore, Defendant required the Plaintiff and some CLASS MEMBERS to drive to and from what Defendant's designate as an initial-stop workplace and final-stop workplace which varied during a payroll period (e.g., floaters) as shown by Defendants' records.  On information and belief, Defendant would often only inform Plaintiff and some CLASS MEMBERS of their initial stop after the last recorded hours worked of the previous workday.  Resultantly, for this reason as well, for Plaintiff and these CLASS MEMBERS' travel to and from work is and was within the scope of employment and/or constituted necessary discharge of duties to Defendant and/or constituted directions by Defendant and/or was subject to Defendants' control and/or was suffered and permitted work..

23.     For Plaintiff and some CLASS MEMBERS the travel to and from a site designate is within the scope of employment and/or constitutes necessary discharge of duties to Defendant and/or constitutes directions by Defendant because the mandated use of the cars of some CLASS MEMBERS provided benefit to the employer.  Here, these CLASS MEMBERS (1) agreed to make the car available as an accommodation to the employer, and (2) Defendant relied on the car's use and expected CLASS MEMBERS to make it available regularly. Here, for these CLASS MEMBERS the Defendant shifted the burdens of ownership and maintenance of the vehicles used for Defendant's trade or business to these CLASS MEMBERS. Defendant's POLICY, at least at San Fernando, was not to reimburse for all miles incurred in the trade or business.

24.     Defendant's POLICIES require, and/or with Defendant's knowledge thereof permit, Plaintiffs and some CLASS MEMBER to pay for expenses incurred in the scope of employment, without reimbursement in full by Defendant for some such expenses.

26.     Defendant is aware that Plaintiff and some CLASS MEMBERS regularly incur travel related expenses in the scope of employment, as employees, in excess of any reimbursements that Defendant may provide, or make available, to them. Defendant nevertheless has, throughout the CLASS PERIOD, failed and refused to reimburse Plaintiff and some CLASS MEMBERS for such business expenses incurred by them.

27.     Plaintiff and some CLASS MEMBERS have been harmed by Defendant's unfair, fraudulent and/or unlawful business expense POLICIES in that they have not been fully paid for said business expenses incurred while employed by Defendant, thereby violating the Labor Code, and owing these CLASS MEMBERS substantial amounts.

## DEFENDANT'S POLICIES OFTEN RESULTED IN UNPAID STATUTORY
## WAGES FOR ALL HOURS WORKED

28.     Defendant is and was required to compensate PLAINTIFF and CLASS MEMBERS for all hours worked. "Hours worked" in California means the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." The words labor and work are synonyms and must be liberally construed. Labor is broadly defined as "labor, work or service."

29.     Defendant's California POLICY provides compensable work to "time spent performing work, engaged in work-related activities, or any time under the direction or control of the Company." Further, Defendant's California POLICY provides: "We expect our employees to be at work as scheduled." The POLICY also provides: "If you work at different locations (e.g., you visit various store locations during a workday), you generally will begin the shift when you arrive at the first location and will end the shift when you depart the last location."

30.     As stated, when an employer requires an employee to use his or her own car providing a benefit to the employer, the employer exercises meaningful control over the method of the travel or and from work, in part, by compelling the employee to foreswear other methods of commuting, such as the use of carpooling, walking, or public transportation.  By driving to and from work, some MERCHANDISERS also conferred a benefit on Defendant by bringing the required cars, an essential instrumentality of the employer's trade or business. Further, while driving, and other times, some MERCHANDISERS were keeping and maintaining the instrumentality.

31.     Defendant's POLICY and directives resulted in the non-payment of hours worked to some CLASS MEMBERS, including but not limited to, as follows:

a.      Defendant instructed MERCHANDISERS to not record hours worked before the first stop, and/or after the last stop.

b.      Defendant required as a condition of employment MERCHANDISERS to own and use their personal vehicles to travel to and from different stops.

c.      MERCHANDISERS used a company issued I-phone, or other phone, to log into applications, download route and related information, and send and receive communications and directives before the first stop and/or after the last stop.

d.      MERCHANDISERS were suffered or permitted to use the company issued I-phone or application before clocking in at the first stop and/or after clocking out at the last stop.

e.    MERCHANDISERS were subjected to direction and control concerning travel to different first stops each day and different last stops each day.

f.    MERCHANDISERS were subject to control, or permitted or suffered to work, through use of phone applications, phone calls, voice mails, text messages or e-mails before clocking in at the first stop and/or after clocking out at the last stop, and/or during meal periods.

g.    MERCHANDISERS who worked as floaters were subject to direction and control before clocking in at the first stop and/or after clocking out at the last stop.

h.    MERCHANDISERS' business travel occurred after the start of the work day, which starting time was the time when Plaintiff and the some CLASS MEMBERS were suffered or permitted to, for example, retrieve information concerning their initial destination and/or routes.

i.    MERCHANDISERS also communicated by cellular phone, text, or e-mail, with others both before the first stop and after the last stop for work related matters.

j.    MERCHANDISERS were also not compensated for hours worked associated with operating said vehicles including time to fuel, maintain and/or repair said vehicles.

32.    Supervisors communicated with Plaintiff and some other MERCHANDISERS before the first stop and after the last stop. Supervisors communicated with Plaintiff and some other MERCHANDISERS on weekends, or days off.

33.    Plaintiff and some CLASS MEMBERS were subject to control or suffered or permitted to work were not paid for all such hours worked. Plaintiff and some CLASS MEMBERS were informed that all such hours worked could not be recorded or was not considered time worked.

34.    CLASS MEMBERS worked using the Myday App. According to Defendant a key Merchandiser success was MyDayApp usage. When the MERCHANDISER logs in the MyDay App it takes time for the application to download the daily activities. The visits including the first visit then display in circles in sequence order.

35.    During the CLASS PERIOD, Defendant's POLICY, at least at the San Fernando branch, directly or indirectly resulted in Defendant not accurately recording of hours worked for some CLASS MEMBERS before the first stop and after the last stop. Defendant's POLICY was also not pay for hours worked when Defendant knew or should have known some CLASS MEMBERS were prohibited from reporting hours worked. Defendant also prohibited some CLASS MEMBERS from clocking in or out at the San Fernando Branch.

36. Defendant also knew or should have known that certain MERCHANDISERS, who were assigned as floaters for one or more day in a work week, were not provided a predetermined assigned route during on the clock hours, and often not until the next business day. Defendant not only provided no ready mechanism for some MERCHANDISERS to report hours worked, or to know the same was hours worked, Defendant's POLICY limited reporting such hours worked.

37. Plaintiff and some CLASS MEMBERS were not paid statutory minimum wages for all hours worked over 40 hours in a week, or 8 hours in a day. Plaintiff and some CLASS MEMBERS were not paid statutory overtime wages for all hours worked over 40 hours in a week, or 8 hours in a day.

## DEFENDANT'S POLICY RESULTED IN SOME UNPROVIDED REST BREAKS

38. Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. Suitable resting facilities shall be provided in an area separate from the toilet rooms and shall be available to employees during work hours.

39. Plaintiff and some CLASS MEMBERS, at least in San Fernando, were not provided rest breaks pursuant to and compliant with the applicable Wage Order requirements.

## CLASS ACTION ALLEGATIONS

40. Plaintiff brings this action, on behalf of himself and all others similarly situated, as a class action pursuant to Code of Civil Procedure § 382. Plaintiff also brings this class action pursuant to the equitable procedures permitted by Business & Professions Code § 17202, 17203 and 17204.

41. The Class that Plaintiff seeks to represent is composed of and defined as Plaintiffs and all other individuals who are or have been employed as "MERCHANDISERS" or in any other similar capacity (hereinafter "CLASS MEMBERS") by Defendant in California during the four years prior to the filing of this action, or during any additional period of tolloing. All such CLASS MEMBERS were subject to Defendant's POLICY at issue.

42. The CLASS MEMBERS are also comprised of the following subclasses:

a. MERCHANDISERS who were mandated to own their own vehicle for work during one or more pay periods.

b. MERCHANDISERS who had fluctuating first-stop locations during one or more pay periods.

c.    MERCHANDISERS who had fluctuating last-stop locations during one or more pay periods.

d.    MERCHANDISERS who were floaters during one or more pay periods.

e.    MERCHANDISERS who were assigned to drive to and from more than one division during one or more pay periods.

f.    MERCHANDISERS who were assigned to drive to and from more than one county during one or more pay periods.

g.    MERCHANDISERS who were assigned to drive to and from more than one metropolitan area during one or more pay periods.

h.    MERCHANDISERS who downloaded information from Defendant's application including the location of a first stop for the workday before clocking in at that first stop during one or more pay periods.

i.    MERCHANDISERS who downloaded information from Defendant's application including the location of a first stop for the next workday after the last stop (i.e., clocking out for that workday) during one or more pay periods.

j.    MERCHANDISERS who recorded less than all miles from home to their first stop on any route during one or more pay periods.

k.    MERCHANDISERS who recorded less than all miles from their last stop to home on any route during one or more pay periods.

l.    MERCHANDISERS who were not compensated for hours worked in handling car related matters such as insurance applications, car repair and car maintenance.

m.    MERCHANDISERS at the San Fernando Branch.

n.    MERCHANDISERS in Southern California.

o.    MERCHANDISERS in Branches in the territory where Nathaniel Bulovas was a Human Resources manager.

p.    MERCHANDISERS in Branches in the territory where Angela Mendoza was a Human Resources manager.

q.    MERCHANDISERS who were supervised by District Manager, Ashrad Javed.

r.    MERCHANDISERS who were supervised by Branch Manager, Ruben Ortega.

43. This action has been brought and may properly be maintained as a class action under Code of Civil Procedure § 382 because there is a well-defined community of interest in the

litigation, the proposed class is easily ascertainable, and Plaintiff is a proper representatives of the Class:

a. Numerosity: The potential members of the Class or Subclasses as defined are many and there are common issues of law or fact. Alternatively, the potential members of the Class or Subclasses as defined are so numerous, or information as to them unknown to Plaintiff, that joinder of all the members of the Class is impracticable. During the CLASS PERIOD Defendant employed more than 40 CLASS MEMBERS in California subject to the same Defendant's POLICIES as PLAINTIFF. Some CLASS MEMBERS are dispersed throughout one or more branches, divisions or other locations in California. Joinder of all members of the proposed classes is therefore not practicable.

b. Commonality: There are questions of law and fact common to the Plaintiffs and the Classes that predominate over any questions affecting only individual members of the Classes. These common questions of law and fact include, without limitation:

1) Whether Defendant adopted a POLICY to fully and/or reasonably reimburse CLASS MEMBERS for the automobile expenses they reasonably and necessarily incurred?

2) If so, was the amount paid to CLASS MEMBERS sufficient to fully and/or reasonably reimburse them for the automobile expenses they reasonably and necessarily incurred?

3) If not so, was the failure to sufficiently reimburse CLASS MEMBERS a violation of Labor Code § 222, 223, 225, or 225.5.

4) Whether Defendant adopted a POLICY to pay statutorily mandated wages to CLASS MEMBERS for all hours worked?

5) If so, was the amount paid to CLASS MEMBERS sufficient to compensate them for all hours worked at the statutorily mandated minimum wage rate?

6) If so, was the amount paid to CLASS MEMBERS sufficient to compensate them for all hours worked at the statutorily mandated overtime wage rate?

7) Whether Defendant adopted a POLICY to pay statutorily mandated wages to CLASS MEMBERS of "time worked," or "hours worked," different from the definition of "hours worked" in the Wage Order and/or Labor Code?

8) If so, did Defendant's POLICY contribute to the non-reporting of "hours worked" under California's definition about which Defendant knew or should have known,?

9) Whether Defendant adopted a POLICY to pay CLASS MEMBERS for all hours worked within the time required from termination of employment?

10)     If so, were CLASS MEMBERS compensated for all hours worked within 30 days from the time required from termination for payment of all wages due?

11)     Whether Defendant adopted a POLICY to pay CLASS MEMBERS who were not on paid standby status after clocking out last stop, but who were required to report to work a second time to by checking communications to determine if there was new or changed information about the location or locations where the employee's presence would be required at the moment of the next-day clock-in?

12)     If so, did CLASS MEMBERS receive two hours of reporting time pay at the regular rate?

13)     If so, was such time compensable hours worked?

14)     Whether Defendant adopted a POLICY to provide CLASS MEMBERS rest periods in compliance with legal requirements during the daily routes?

15)     If so, were CLASS MEMBERS compensated with premium pay when compliant rest periods were not provided?

16)     Whether any of Defendants' conduct was unfair, unlawful or fraudulent under Business and Professions Code § 17200, et seq.;

17)     If so, are CLASS MEMBERS entitled to relief under Business and Professions Code, § 17202, 17203 or 17204.

18)     The proper formula(s) or method(s) for calculating damages, interest, penalties and/or restitution owed to Plaintiff and Class Members.

19)     The proper formula(s) or method(s) for providing relief to CLASS MEMBERS that (1) may be necessary to prevent the use or employment by Defendant of any practice which constitutes unfair competition, or (2) as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

c.     Typicality: Plaintiffs' claims are typical of the claims of the Class and Subclasses. Both Plaintiff and some CLASS MEMBERS sustained harm, injuries and/or damages, and were deprived of property rightly belonging to them, arising out of and caused by Defendant's common course of conduct in violation of law as alleged herein, in similar ways and for the same types of expenses, wages or premiums owed.

d.     Adequacy of Representation: Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class. Plaintiffs' interests do not conflict with

those of Class. Counsel who represents Plaintiffs are competent and experienced in litigating wage and hour class actions, and other employment class actions, and will devote sufficient time and resources to the case and otherwise adequately represent the Class.

e.      Superiority of Class Action: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Relief through individual actions is not practicable. Individual joinder of all Class Members is not practicable, and one or more questions of law and fact common to the Classes predominate over any questions affecting only individual members of each Class. Class or representative relief may also be ordered pursuant Business & Professions Code § 17200, et seq. Each Class Member has been damaged, or may have been damaged, or may be damaged in the future by reason of Defendant's unlawful, unfair or fraudulent policies and/or practices. Certification of this case as a class action will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Certifying this case as a class action is superior because it allows for proper notice, as well as designing efficient and full relief. Certifying this case as a class action, and ordering relief sought will effectuate California's strong public policy of protecting employees. If this action is not certified as a Class Action, it will be impossible as a practical matter for many or most Class Members to enforce their rights.

f.      Equity:  Four unfair competition, Plaintiff is not required to establish individualized harm. The Court may make such orders or judgments, as (1) *may be* necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, or (2) as *may be* necessary to restore to any person in interest any money or property, real or personal, which *may have been* acquired by means of such unfair competition.

## FIRST CAUSE OF ACTION FAILURE TO REIMBURSE EXPENSES
### (Against all Defendants)

44.      The allegations of Paragraphs 1 through 43 are re-alleged and incorporated herein by reference, and Plaintiff alleges this cause of action on behalf of themselves and the above-described class of similarly situated CLASS MEMBERS.

45.      Both the wage orders and the wage and hour laws are liberally construed to favor the protection of employees. California employee labor protections must be interpreted to protect employees.

46.      Labor Code § 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee [1] in direct

1  consequence of the discharge of his or her duties, or [2] of his or her obedience to the directions of

2  the employer." Labor Code section 2804 voids any agreement to waive the protections of Labor

3  Code section 2802 as against public policy. Labor Code section 2804 provides, "Any contract or

4  agreement, express or implied, made by any employee to waive the benefits of this article or any

5  part thereof, is null and void, and this article shall not deprive any employee or his personal

6  representative of any right or remedy to which he is entitled under the laws of this State."

7       47.    For example, California has a strong public policy that favors the indemnification of

8  employees by their employers for the employees' acts within the course and scope of their

9  employment. One test for reimbursement is whether the relevant conduct was within the course and

10  scope of employment. *Jacobus v. Krambo Corp.*, 78 Cal. App. 4th 1096, 1101 (2000).

11       48.    Defendant's POLICY was not to reimburse some CLASS MEMBERS for some

12  reimbursable travel mileage expenses. Here, these alleged unreimbursed miles or expenses were

13  within the scope of employment for independent reasons, including but not limited to the

14  following:

15       a.    Where, as here, an employer requires the use of a car work, such as driving to and

16  from a work location(s), it within the course and scope and is not ordinary commuting time.

17  *Moradi v. Marsh USA*, 219 Cal. App. 4th 886, 899-900 (2013) ("Driving a required vehicle,

18  however, is a horse of another color because it satisfies the control and benefit elements of

19  respondeat superior. An employee who is required to use his or her own vehicle provides an

20  'essential instrumentality' for the performance of the employer's work. . . . ")

21       b.    Where, as here, an employer directs and controls to use his own vehicle to appear at

22  a varying location where an employee is required to present for work, such is within the scope of

23  employment. C.f., Labor Code § 510(b) (context of hours worked).

24       c.    When, as here, tools or equipment are required by the employer, or are necessary to

25  the performance of a job, such tools and equipment shall be provided and maintained by the

26  employer. See, California Wage Order. The employer cannot shift some of the costs of a required

27  car to the employee.

28       d.    When, as here, the employee is permitted or suffered to perform day-to-day pre-

29  travel work, or is subject to the control of the employer, due to, amongst other matters, obtaining

30  the route schedule and information after the conclusion of the prior business day, travel time is

31  within the scope of employment.

32

e.      When, as here, the employee delivers his or her car to the first route stop, such
delivery constitutes conduct within the scope of employment.

f.      When, as here, the employer does not reimburse for some miles, it either directly or
indirectly reduces wages paid, withholds wages, or constitutes repayment of wages. E.g., Labor
Code § 221, 223 and/or 225.

49.    Here, Defendant did not pay Plaintiff and some CLASS MEMBERS for some work
travel related expenses.  Defendants were unjustly enriched at the expense of some CLASS
MEMBERS.

50.    Defendant's failure to pay for or reimburse the reasonable travel related expenses of
Plaintiff and some CLASS MEMBERS violated non-waivable rights secured to Plaintiffs and Class
Members by Labor Code §2802.

51.    Plaintiffs and similarly situated CLASS MEMBERS are entitled to reimbursement
for these necessary expenditures in the scope of employment, plus interest and attorneys' fees and
costs, under Labor Code § 2802.

## SECOND CAUSE OF ACTION FAILURE TO PAY CALIFORNIA MINIMUM
## WAGES FOR ALL HOURS WORKED
### (Against All Defendants)

52.    The allegations of Paragraphs 1 through 51 are re-alleged and incorporated herein
by reference, and Plaintiff alleges this cause of action on behalf of himself and the above-described
class of similarly situated CLASS MEMBERS.

53.    Both the wage orders and the wage and hour laws are liberally construed to favor the
protection of employees.  The wage orders are intended to accord workers a modicum of dignity.

54.    Courts must construe "hours worked" definition liberally to achieve wage order's
terms and serve its remedial purposes. "Hours worked" includes "the time during which an
employee is subject to the control of an employer, and includes all the time the employee is
suffered or permitted to work, whether or not required to do so."

55.    An employee who is subject to the control of an employer does not have to be
working during that time to be compensated under the Wage Orders. Likewise, an employee who is
suffered or permitted to work does not have to be under the employer's control to be compensated,
provided the employer has or should have knowledge of the employee's work.  An employer does
not have to require the hours worked for the time to be compensable.

56. Here, for example, where Defendant directed or compeled, directly or indirectly, some CLASS MEMBERS to use a car to travel to and from a route, such work such time is within the definition of hours worked. The requirement of a car benefits Defendant who suffers and permits the CLASS MEMBER to provide the service, labor, or work for which he or she is engaged. Defendant also, for example, knew or should have known of CLASS MEMBERS being suffered or permitted to work whether or not required to do so.

57. Further, Defendant's California Wage and Hour policy violates California law to the extent it is designed or administered in a manner narrower than California law, such as, for example. Here, Defendant's POLICY defines work as time spent performing work, engaged in work-related activities, or any time under the direction or control of Defendant. Plaintiff was instructed under Defendant's POLICY not to record hours worked.

58. As another example, Defendant required some CLASS MEMBERS to use employer provided I-phones containing certain work-related applications to obtain work related information. Defendant suffered or permitted some CLASS MEMBERS to use the I-phones, and applications provided thereon, to log-in, download information, check messages, voice mail and make and receive phone calls. The employer provided applications some CLASS MEMBERS were suffered or permitted to use, or were expected to use, before the first stop and after the last stop. This included the Merch Myday App and the Merch MyTime App. Defendant knew or should have known from its own computer application data that certain MERCHANDISERS would log into the application outside of Defendant's compensated workday. The Application was used to download daily activities, including downloading the daily visits and any delivery details.

59. Also, transportation time after logging into and downloading work related directives, etc. is hours worked. Neither Plaintiff nor some CLASS MEMBERS could realistically eliminate the necessity to travel. Once the workday begins all hours worked must be compensated until the end of the workday.

60. Hours worked also includes the transportation time after the last stop. Defendant suffered or permitted Plaintiff and some CLASS MEMBERS to use the I-phones, and applications provided thereon, to log-in, download information, check text messages, check voice mail, and make and receive phone calls, texts or voice mails after the last stop.

61.    Defendant POLICY limited some CLASS MEMBERS from recording hours worked before the first stop or after the last stop.  Defendant instructed Plaintiff and some CLASS MEMBERS that hours worked before the first stop and after the last stop was not compensable.

62.    Defendant's POLICIES establish Plaintiff and some CLASS MEMBERS hours worked in multiple ways, including but not limited to:

a.    Defendant required MERCHANDISERS to own and use their own car for use in the employer's trade or business, and provided other directives and expectations.

b.    The required personal car benefited Defendant who for example did not have to provide, or maintain, or insure vehicles, for MERCHANDISERS.

c.    The use of the required car to travel to the first stop and from the last stop could not be genuinely avoided.

d.    Defendant also directed or controlled the account locations where MERCHANDISERS presence with a car was required.

e.    Defendant also directed or controlled MERCHANDISERS to service routes in different cities, counties, or metropolitan areas, including for example working in different divisions or districts.

f.    Defendant suffered or permitted MERCHANDISERS who performed returns for out of date items to obtain supplies (trays) from the plant before the first stop or after the last stop.

g.    MERCHANDISERS who worked as floaters were suffered or permitted to report for work a second time during a workday, after clocking out for the last stop, to obtain the route for the next day.

h.    MERCHANDISERS were suffered or permitted, or subject to control, in using the employer's Merchandiser applications before the first stop, or after the last stop.

i.    MERCHANDISERS were responsible for providing maintenance to the vehicles and completing vehicle repairs in a timely manner.

63.    Pursuant to Labor Code §§ 1194, 1194.2, 1197, and 1197.1, it is unlawful for an employer to subject an employee to control, or suffer or permit a California employee to work (provide labor, service or work) without paying wages at the proper minimum wage for all hours worked.  Throughout the CLASS PERIOD, Plaintiff and some CLASS MEMBERS received less than the minimum wage as such CLASS MEMBERS were not paid for all hours worked during at least one work week. For all hours worked that Plaintiff and each of the Class Members worked and received less than the state minimum wage, they are entitled to no less than the state minimum

1  wage and, pursuant to Labor Code § 1194.2, subdivision (a), liquidated damages in an amount
2  equal to the unpaid minimum wages and interest thereon. Pursuant to Labor Code § 1194, Plaintiff
3  and the CLASS MEMBERS are also entitled to their attorneys' fees, costs, and interest according
4  to proof.

5      64.    Pursuant to Wage Orders Plaintiff and some CLASS MEMBERS were not paid two
6  hours of reporting time pay, either at the minimum wage or regular rate, when suffered or permitted
7  to check, after the last stop, to ontain information if there was new or different assigned work in a
8  different division.

9      65.    Pursuant to Wage Orders Plaintiff and some CLASS MEMBERS were not paid two
10  hours of reporting time pay, either at the minimum wage or regular rate, when called (or contacted)
11  after the last stop (off-the-clock) for Defendant to provide a work assignment(s).

**THIRD CAUSE OF ACTION FAILURE TO PAY**

**OVERTIME FOR ALL HOURS WORKED**

**(Against All Defendants)**

15     66.    The allegations of Paragraphs 1 through 65 are re-alleged and incorporated herein
16  by reference, and Plaintiff allege this cause of action on behalf of himself and the above-described
17  class of similarly situated CLASS MEMBERS.

18     67.    Defendant subject Plaintif and some CLASS MEMBERS to control before their first
19  stop and after their last stop.  Defendant knew or should have known of CLASS MEMBERS hours
20  worked before their first stop and after their last stop.  Under Defendant's POLICIES Plaintiff and
21  some CLASS MEMBERS were not compensated for all hours worked in multiple ways, including
22  but not limited to as alleged above.

23     68.    By failing to properly compensate Plaintiff and some CLASS MEMBERS for all
24  hours worked, Defendant has violated the Labor Code. Defendant has failed to pay owed overtime
25  wages to some CLASS MEMBERS employed for five-day workweeks for work in excess of eight
26  hours in a day and 40 hours in a week.

27     69.    Defendant also suffered or permitted some CLASS MEMBERS at times to report
28  for work a second time during a workday, after clocking out for the last stop.  CLASS MEMBERS
29  would report by, for example, checking text messages, voice mails, or applications to determine for
30  example if they were being assigned to a different first stop. CLASS MEMBERS were not paid for
31  such time, or for travel time.

32

70.     Pursuant to Labor Code §§ 1194 and 1198, Plaintiffs and CLASS MEMBERS are entitled to recover in a civil action the unpaid balance of the full amount of overtime compensation owed to them, including interest thereon, plus reasonable attorney's fees and costs of suit.

### FOURTH CAUSE OF ACTION FOR FAILURE TO PAY COMPENSATION OWED AT TIME OF TERMINATION (LABOR CODE §§ 201-203)
### (AGAINST ALL DEFENDANTS)

71.     The allegations of Paragraphs 1 through 70 are re-alleged and incorporated herein by reference, and Plaintiff alleges this cause of action on behalf of himself and the above-described class of similarly situated CLASS MEMBERS

72.     Labor Code §§ 201 and 202 require Defendant to pay all compensation due and owing to Plaintiff and some former employee CLASS MEMBERS at the time of, or within three days form when, employment was terminated. Labor Code § 203 provides that if an employer willfully fails to pay compensation promptly upon discharge or resignation, as required under §§ 201 and 202, then the employer is liable for continued wages for up to thirty (30) days.

73.     Defendant willfully failed to pay Plaintiff and similarly situated CLASS MEMBERS who are no longer employed by Defendant all compensation due upon termination of employment as required under Labor Code §§ 201 and 202. Plaintiff and CLASS MEMBERS were not paid for hours worked as alleged above, and or were not paid some wages owed.

74.     As a result, Defendant is liable to such CLASS MEMBERS for wages and continuing wages pursuant to Labor Code § 203; Business & Professions Code § 17202.

75.     Plaintiff, on behalf of himself and CLASS MEMBERS, requests relief as described below.

### FIFTH CAUSE OF ACTION FOR PREMIUM PAY (LABOR CODE SECTION 226.7)
### (Against All Defendants)

76.     The allegations of Paragraphs 1 through 75 are re-alleged and incorporated herein by reference, and Plaintiff allege this cause of action on behalf of himself and the above-described class of similarly situated CLASS MEMBERS.

77.     The Wage Order provides: Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the

1  employer shall pay the employee one (1) hour of pay at the employee's regular rate of
2  compensation for each workday that the rest period is not provided. Rest periods must be duty and
3  obligation free.

4      78.    The applicable Wage Order further states: "Suitable resting facilities shall be
5  provided in an area separate from the toilet rooms and shall be available to employees during work
6  hours."

7      79.    Defendant did not Pauthorize or permit compliant rest breaks for Plaintiff and some
8  CLASS MEMBERS. Plaintiff and some CLASS MEMBERS were not completely free of duty and
9  obligation. Defendant's POLICY provided Plaintiff and some CLASS MEMBERS should remain
10 on the work premises for rest breaks. Defendant's POLICY did not provide Plaintiff and some
11 CLASS MEMBERS suitable resting facilities or communicate the same. Defendant did not provide
12 Plaintiff and some CLASS MEMBERS suitable resting facilities.

13     80.    Plaintiff on behalf of himself and the CLASS MEMBERS seeks premium pay
14 pursuant to Labor Code § 226.7.

15 **SIXTH CAUSE OF ACTION UNFAIR COMPETITION (BUS. & PROF. CODE § 17200)**
16 **(Against All Defendants)**

17     81.    The allegations of Paragraphs 1 through 80 are re-alleged and incorporated herein
18 by reference, and Plaintiff alleges this cause of action on behalf of himself and the above-described
19 class of similarly situated CLASS MEMBERS.

20     82.    California's Unfair Competition Law, Business and Profession Code §§ 17200 et
21 seq., prohibits unfair competition in the form of any unlawful, unfair or fraudulent business act or
22 practice. California Business and Professions Code § 17204 allows "any person who has suffered
23 injury in fact and has lost money or property as a result of such unfair competition" to prosecute a
24 civil action for violation of the UCL.

25     83.    Labor Code § 90.5(a) states it is the public policy of California to vigorously enforce
26 minimum labor standards in order to ensure employees are not required to work under substandard
27 and unlawful conditions, and to protect employers who comply with the law from those who
28 attempt to gain competitive advantage at the expense of their workers by failing to comply with
29 minimum labor standards.

30     84.    Beginning at an exact date unknown to Plaintiff, but at least since the date four years
31 prior to the filing of this suit, Defendant has committed acts of unfair competition as defined by the
32

1 UCL, by engaging in the fraudulent, unlawful or unfair business practices and acts described in this

2 Complaint, including but not limited to:

3       a.      violations of Labor Code § 2802 and/or Wage Orders pertaining to failure to

4 reimburse employees for business expenses;

5       b.      violations of the Labor Code and/or Wage Orders, pertaining to payment of wages,

6 minimum wages, overtime, reporting time, and/or other mandates;

7       c.      violations of Labor Code §§ 201-202 pertaining to the payment of compensation due

8 and owing to employees immediately upon discharge.

9       d.      unfair, fraudulent or unlawful POLICIES and/or directives including those about,

10 which resulted, or may have resulted in, Defendant acquiring money or property, real or personal,

11 from CLASS MEMBERS by means of such unfair competition.

12       85.      As part of Defendant's unfair, unlawful, or fraudulent business practices, Defendant

13 has permitted common policies or practices contributing to the denial, or which may have resulted

14 in the denial, of some MERCHANDISERS statutory rights concerning hours worked,

15 compensation, and expense reimbursement.

16       86.      The violations of these laws and regulations, as well as of the fundamental

17 California public policies protecting workers, as all as Defendant's POLICIES and/or directives

18 serve as unlawful, unfair, or fraudulent predicate acts and practices for purposes of the UCL.

19       87.      The acts and practices described above constitute unfair, fraudulent or unlawful

20 business practices, and unfair competition, within the meaning of the UCL. Among other things,

21 Defendant's practices have enabled Defendant to gain an unfair competitive advantage over law-

22 abiding employers and competitors.

23       88.      Plaintiff seeks orders or judgments, including but not limited to those as (1) *may be*

24 necessary to prevent the use or employment by Defendant of any practice which constitutes unfair

25 competition, or (2) as *may be* necessary to restore to any person in interest any money or property,

26 real or personal, which *may have* been acquired by means of such unfair competition. Business and

27 Profession Code § 17203.

28       89.      Plaintiff seeks all other relief available pursuant to Business and Profession Code §

29 17203 and 17204.

30       90.      Plaintiff also seeks the enforcement of specific and/or preventive relief under the

31 Labor Code, §17202. See, e.g., Labor Code § 203, 210, 215, 216, 225, 558, 558.1, 1174.5, 1197.1,

32 1199, 1199.5, 1206, and/or 1207.

91.    The statute of limitations pursuant to Business and Professions Code § 17200, et. se. is four years. Business and Professions Code § 17208.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

A. That the Court determine that this action may be maintained as a class action under Code of Civil Procedure §382, and define the Class and/or Subclasses as requested herein, or as otherwise appropriate.

B. That the Court find and declare that Defendant's expense policies and/or practices violate California law, including Labor Code §2802, by refusing and/or failing to reimburse some expenses incurred by Plaintiffs and other and Class Members;

C. That the Court find that Defendant willfully failed to pay Plaintiff and Class Members who are no longer employed by Defendant all compensation due upon termination of employment in violation of Labor Code §§ 201, 202 and 203;

D. That the Court find and declare that Defendant has violated the UCL and committed unfair, unlawful or fraudulent business practices;

E. That the Court award to Plaintiff and Class Members unreimbursed expenses, and interest thereon, that they are owed, pursuant to Labor Code § 2802;

F. That the Court award to Plaintiff and Class Members all statutory wages, that they are owed, pursuant to the Labor Code;

G. That the Court award to Plaintiff and Class Members all liquidated damages, that they are owed, pursuant to the Labor Code;

H. That the Court award waiting time penalties to Plaintiff and former employee Class Members pursuant to Labor Code § 203;

I.    That Defendant be ordered to pay restitution to Plaintiff and the Class pursuant to Business and Professions Code §§ 17200-17205;

J.    The Court make such orders or judgments, as may be necessary to prevent the use or employment by Defendant of any practice which constitutes unfair competition.

K.    The Court make such orders or judgments, as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

1      L.    That the Court award penalties pursuant to applicable provisions of the Labor Code,

2   or as enforceable, pursuant to Business and Professions Code § 17202.

3      M.    That Plaintiff and the Class Members be awarded reasonable attorneys' fees and

4   costs pursuant to the Labor Code, Code of Civil Procedure § 1021.5, and Business and Professions

5   Code § 17200, et seq., and/or other applicable law.

6      N.    That the Court preliminarily and/or permanently enjoin Defendant from further

7   engaging in the acts alleged herein;

8      O.    That the Court award such other and further relief as this Court may deem

9   appropriate.

10                      **DEMAND FOR JURY TRIAL**

11      Plaintiff, on behalf of himself and the Class Members, hereby demands a jury trial on all

12   causes of action and claims with respect to which they have a right to jury trial.

13

14   Dated: April 19, 2022          BLADY WORKFORCE LAW GROUP, APLC

15

16                  By: _____

17                        I Benjamin Blady, Esq. for Plaintiff

18

19                          **VERIFICATION**

20      Pursuant to and under the requirements of the Code of Civil Procedure, counsel asserts that

21   he has read this Complaint; and that Plainiff is outside of Los Angeles County. Counsel is informed

22   or and believes the truth of the factual allegations; and, based on the above, verifies, attests and

23   swears under oath that the matters stated herein are believed to be true and on that ground so

24   alleges.

25

26

27   Dated: April 19, 2022          BLADY WORKFORCE LAW GROUP, APLC

28                  By: _____

29                        I Benjamin Blady, Esq. for Plaintiff

30

31

32

# EXHIBIT B

**Wolters Kluwer**

## Service of Process Transmittal Summary

**TO:**     Stephen Cole
KEURIG DR PEPPER SNAPPLE GROUP
6425 HALL OF FAME LN
FRISCO, TX 75034-1954

**RE:**     **Process Served in California**

**FOR:**    The American Bottling Company  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: Curtis Higgins, an individual // To: The American Bottling Company |
| **CASE #:** | 22STCV13127 |
| **NATURE OF ACTION:** | Employee Litigation |
| **PROCESS SERVED ON:** | C T Corporation System, GLENDALE, CA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 06/30/2022 at 09:48 |
| **JURISDICTION SERVED:** | California |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/30/2022, Expected Purge Date: 07/05/2022 |
| | Image SOP |
| | Email Notification,  Janet Barrett  janet.barrett@kdrp.com |
| | Email Notification,  Stephen Cole  stephen.cole@kdrp.com |
| | Email Notification,  INGA HARRISON  inga.harrison@kdrp.com |
| | Email Notification,  Lauren Timmons  lauren.timmons@kdrp.com |
| | Email Notification,  Indira Wanser  indira.wanser@kdrp.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System |
| | 330 N BRAND BLVD |
| | STE 700 |
| | GLENDALE, CA 91203 |
| | 866-665-5799 |
| | SouthTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                         Thu, Jun 30, 2022
**Server Name:**                  Dion Jones

| Entity Served | THE AMERICAN BOTTLING COMPANY |
|---|---|
| Case Number | 22STCV13127 |
| Jurisdiction | CA |

| Inserts | | |
|---|---|---|
| | | |



# CERTIFICATE OF SERVICE

STATE OF CALIFORNIA          )
)  SS
COUNTY OF LOS ANGELES     )

      I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 2029 Century Park East, Suite 3500, Los Angeles, California 90067-3021. On August 1, 2022, I served the within document(s):

      DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California, addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by placing the document(s) listed above, together with an unsigned copy of this declaration, in a sealed envelope or package provided by an overnight delivery carrier with postage paid on account and deposited for collection with the overnight carrier at Los Angeles, California, addressed as set forth below.

☐ by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth below.

☐ electronically by using the Court's ECF/CM System.

Benjamin Blady               Attorneys for Plaintiff
BLADY WORKFORCE LAW GROUP,    CURTIS HIGGINS
LLP
5757 Wilshire Boulevard, Suite 535    Email: bblady@bwlawgroup.com
Los Angeles, California 90036

      I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

      Executed on August 1, 2022, at Los Angeles, California.

                         */s/ Paulin Kim*
                         Paulin Kim

85170271v.1