JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 22-5351 JGB (KKx)** | Date | October 21, 2022 |
|---|---|---|---|
| Title | ***Curtis Higgins v. The American Bottling Company, et al.*** | | |

Present: The Honorable      JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

Proceedings:      **Order (1) GRANTING Plaintiff's Motion to Remand (Dkt. No. 15) and (2) VACATING the October 24, 2022 Hearing (IN CHAMBERS)**

Before the Court is a motion to remand filed by Plaintiff Curtis Higgins ("Plaintiff" or "Mr. Higgins"). ("Motion," Dkt. No. 15.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion. The Court **VACATES** the hearing set for October 24, 2022.

## I. BACKGROUND

On April 19, 2022, Plaintiff Curtis Higgins ("Plaintiff") filed a class action complaint in the Superior Court of California for the County of Los Angeles against Defendants The American Bottling Company ("Defendant" or "ABC") and Does 1 through 10. ("Complaint," Notice of Removal ("NOR"), Dkt. No. 1, Ex. A.) On June 30, 2022, ABC's registered agent accepted service of process of the summons and complaint. (NOR ¶ 2.) On August 1, 2022, ABC removed the action pursuant to the Class Action Fairness Act ("CAFA"). (NOR.) The Complaint alleges six causes of action: (1) failure to reimburse employee expenses (Cal. Lab. Code § 2802); (2) failure to pay minimum statutory wages for all hour worked (Cal. Lab. Code §§ 500, 510, 1194, 1194.2); (3) failure to pay minimum statutory wages for all hour worked (Cal. Lab. Code §§ 500, 510, 1194, 1194.2); (4) failure to provide compliant rest periods; (5) waiting time penalties (Cal. Lab. Code. §§ 201-203); and (6) UCL violations (Cal. Bus. & Prof. Code. §§ 17200-17208. (Complaint.)

On August 18, 2022, Plaintiff filed a notice of related cases. ("Plaintiff NORC," Dkt. No. 13.)  On August 19, 2022, ABC filed a notice of related cases. ("ABC NORC," Dkt. No. 14.)

On August 31, 2022, Plaintiff filed the Motion. (Motion.)  On September 5, 2022, Plaintiff filed a Notice of Errata correcting the Motion. (Dkt. No. 19.)  On September 7, 2022, ABC filed a Notice of Errata correcting the NOR. (Dkt. No. 20.)  On September 9, 2022, ABC opposed. ("Opposition," Dkt. No. 21.)  ABC concurrently filed an appendix with various exhibits and a request for judicial notice ("Appendix"; "RJN," Dkt. No. 22.)  On September 16, 2022, Plaintiff replied. ("Reply," Dkt. No. 24.)

On September 23, 2022, the case was transferred from Judge Dolly M. Gee to this Court. (Dkt. No. 25.)  On September 28, 2022, the Court continued the hearing on the Motion from September 30, 2022 to October 24, 2022. (Dkt. No. 27.)

## II.   LEGAL STANDARD

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1195 (9th Cir. 2015).  "In determining the amount in controversy, courts first look to the complaint.  Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." Id. at 1197 (quotations omitted).  "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." Id.

A defendant is required to file a notice of removal that includes only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 554 (2014).  However, if a plaintiff contests these allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id.  The preponderance of the evidence standard requires that "the defendant must provide evidence establishing that it is more likely than not that the amount in controversy exceeds that amount." Sanchez v. Monumental Life. Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) (internal quotations omitted).  The parties "may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of the removal." Ibarra, 775 F.3d at 1197 (internal quotations and citation omitted).  "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Id.

"CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198.  "As with other important areas of our law, evidence may be

direct or circumstantial.  In either event, a damages assessment may require a chain of reasoning that includes assumptions.  When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them."  Id. at 1199.  "Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction."  Id.

Under certain circumstances, attorney's fees may also be included in the amount in controversy.  "[I]f the law entitles the plaintiff to future attorneys' fees if the action succeeds, then there is no question that future attorneys' fees are at stake in the litigation, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy."  Fritsch v. Swift Transp. Co. of Ariz., 899 F.3d 785, 794 (9th Cir. 2018) (internal quotations, brackets, and citation omitted).  However, "a court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place."  Id. at 796.

## III.   DISCUSSION

Plaintiff's arguments for remand fall into two broad categories: ABC fails to demonstrate the propriety of CAFA jurisdiction and did not comply with various procedural requirements related to removal.  The Court addresses these arguments in turn.  First, however, the Court considers Defendant's RJN and the parties' arguments regarding alleged noncompliance with Local Rule 7-3.

## A.  Request for Judicial Notice

ABC requests judicial notice of two documents:

- Declaration of Benjamin Blady in Support of Final Approval of Class Action Settlement, filed in the United States District Court for the Central District of California, Western Division, in the case entitled Donald Sterling Hodge and Lerry Moppin v. Cardinal Logistics Management Corporation, et. al. (Case No. CV11-8346 CAS (JcGx)).  ("Ex. 30," Dkt. No. 22.);
- Class Action Complaint filed in the action Esmeralda Zarazua v. Industrial Clerical Recruiters, Inc. et. al., Superior Court of the State of California, County of San Bernardino (Case No. CIVSB2202968).  ("Ex. 31," Dkt. No. 22.)

(See RJN.)

Proceedings of other courts, including orders and filings, are the proper subject of judicial notice when directly related to the case.  See United States ex. Rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 917 F.2d 244, 248 (9th Cir. 1992) (courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."); Ducket v. Godinez, 67 F.3d 734, 741

(9th Cir. 1995) ("We may take judicial notice of proceedings in other courts, whether in the federal or state systems").

ABC never references Ex. 30 in its Opposition. (See Opposition.) It is unclear to the Court what the exhibit is meant to show. Because the Court does not rely on the document, the RJN regarding Ex. 30 is DENIED. See Moore v. Rodriguez, 2021 WL 2222590, at *23 (S.D. Cal. June 2, 2021) (denying defendant's request for judicial notice submitted in connection with a motion because the court did not rely on the document's contents). Ex. 31 is properly subject to judicial notice and is useful to the Court's analysis. The Court therefore GRANTS ABC's RJN regarding Ex. 31.

## B. Local Rule 7-3

The parties accuse one another of noncompliance with Local Rule 7-3 for failure to fully adhere with meet and confer requirements. (See Motion at 9-10; Opposition at 5, 7-8.) On that basis, Plaintiff requests that the Court strike ABC's Opposition; ABC requests that the Court deny the Motion. (See id.) At the heart of the dispute is Defendant counsel's battle with Covid-19, which understandably rendered a timely meet and confer conference more difficult. (Opposition at 9.) Essentially, ABC argues that Plaintiff was indifferent to Defendant counsel's illness and filed the Motion without adequately notifying ABC of the arguments he intended to make in the Motion (id.); Plaintiff argues that he attempted to meet and confer in good faith and does not understand why Defendant's co-counsel could not have responded within the two-week period he specified. (Reply at 4.) While the Court understands the parties' mutual frustration, it finds the dueling accusations of bad faith overblown. More importantly, it appears that a meet and confer conference would have been unlikely to resolve the issues before the Court and the parties were able to adequately brief them. Because it finds that neither party suffered prejudice due to any alleged noncompliance with Local Rule 7-3, the Court proceeds to consider the merits. See, e.g., Reed v. Sandstone Properties, L.P., 2013 WL 1344912, at *6 (C.D. Cal. Apr. 2, 2013) ("Because Reed suffered no real prejudice as a result of the late conference, however, the court elects to consider the motion on the merits."); De Walshe v. Togo's Eateries, Inc., 567 F. Supp. 2d 1198, 1205 (C.D. Cal. 2008) ("[T]he Court finds that any potential violation of Local Rule 7-3 did not prejudice Plaintiff and the Court exercises its discretion to evaluate Defendant's motion on its merits."); Wilson-Condon v. Allstate Indem. Co., 2011 WL 3439272, at *1 (C.D. Cal. Aug. 4, 2011) ("[Defendant] does not appear to have suffered any prejudice from Plaintiff's failure to meet and confer sufficiently in advance, and [Defendant] was able to prepare and submit an opposition. Thus, it appears that no prejudice will result if the Court considers the motion to remand on the merits notwithstanding Plaintiff's failure to comply with Local Rule 7–3."); CarMax Auto Superstores California LLC v. Hernandez, 94 F. Supp. 3d 1078, 1088 (C.D. Cal. 2015) ("Failure to comply with the Local Rules does not automatically require the denial of a party's motion, ... particularly where the non-moving party has suffered no apparent prejudice as a result of the failure to comply") (collecting cases).

//
//

**CIVIL MINUTES—GENERAL**    Initials of Deputy Clerk NP

**C.  CAFA: 100 or More Persons**

Here, the most important disputed fact for purposes of determining CAFA jurisdiction is the number of proposed class members.  According to Plaintiff, the Complaint alleges in good faith that roughly 50 individuals suffered harm as a result of Defendant's actions.  (Motion at 14; Compl. ¶¶ 4, 12.)  Defendant contends that the case involves over 1,800 putative class members.  (Opposition at 3.)  While the parties debate these respective figures regarding whether the action exceeds the $5,000,000 threshold necessary for jurisdiction under CAFA, the Court observes that the issue potentially presents an even more fundamental defect: CAFA does not apply to actions involving fewer than 100 plaintiffs.

Under CAFA, the Court has "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which" there is minimal diversity.  28 U.S.C. § 1332(d)(2).  However, CAFA states that these provisions "shall not apply to any class action in which . . . the number of members of all proposed plaintiff classes in the aggregate is less than 100."  28 U.S.C. § 1332(d)(5).  The Ninth Circuit construes this provision as follows:

> The Fifth Circuit characterized § 1332(d)(5) as an "exception" to CAFA jurisdiction conferred under § 1332(d)(2). See [Frazier v. Pioneer Americas LLC, 455 F.3d 542, 546 (5th Cir. 2006)].  We view § 1332(d)(5) somewhat differently. Although subsection (5) appears later in the statute, it plainly provides that "*paragraphs (2) through (4) shall not apply* to any class action in which . . . the number of members of all proposed plaintiff classes in the aggregate is less than 100." § 1332(d)(5) (emphasis added).  Thus, satisfaction of § 1332(d)(5) serves as a prerequisite, rather than as an exception, to jurisdiction under § 1332(d)(2).  This distinction is important because, as we address later, there are "exceptions" to the statute in which jurisdiction otherwise exists under § 1332(d)(2) but the federal courts either may or must decline to exercise that jurisdiction.  See, e.g., § 1332(d)(3)-(4).  Our approach is consistent with the view adopted by the Seventh Circuit in [Hart v. FedEx Ground Package Sys. Inc., 457 F.3d 675, 679 (7th Cir. 2006)] (holding that the provisions of § 1332(d)(5) must be satisfied before CAFA applies to a class action).

Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1021 n.3 (9th Cir. 2007).  Serrano reiterates three principles: (1) the burden of demonstrating removal jurisdiction under CAFA remains with its proponent; (2) the party seeking remand, however, bears the burden to prove an "exception" to CAFA's jurisdiction; and (3) neither the amount in controversy nor the number of members in a proposed class is an "exception" to CAFA's jurisdiction, but are rather "prerequisites."  See id. at 1021-22.  Therefore, ABC, the removing party asserting CAFA jurisdiction, bears the burden

of demonstrating that the proposed class exceeds 100 individuals and the amount in controversy exceeds $5,000,000.

Before turning to the relevant allegations, the Court notes that some plaintiffs might seek to avoid CAFA removal by deliberately defining their proposed class beneath the 100-member threshold. Plaintiffs might employ different strategies to do so, whether defining their class narrowly or filing separate (but similar) class actions on behalf of classes with fewer than 100 putative members. Some courts view critically such efforts to plead around CAFA removability. See, e.g., Freeman v. Blue Ridge Paper Prods., Inc., 551 F.3d 405, 407–09 (6th Cir. 2008) (rejecting plaintiffs' attempt to avoid CAFA jurisdiction by dividing claims into five separate suits for six-month periods to keep damages at $4.9 million, concluding "there is no colorable basis for dividing up the sought-for retrospective relief into separate time periods, other than to frustrate CAFA"). The Ninth Circuit has read Freeman (and its ilk) narrowly, rejecting in Tanoh v. Dow Chemical Co., 561 F.3d 945 (9th Cir. 2009) the defendant's argument that Freeman "stand[s] for the general proposition that plaintiffs' lawyers cannot 'game' the system by artificially structuring their suits so as to avoid CAFA jurisdiction." Id. at 956. The Tanoh court noted that the Sixth Circuit "specifically 'limited [its holding] to the situation where there is no colorable basis for dividing up the sought-for retrospective relief into separate time periods, other than to frustrate CAFA.'" Id. (quoting Freeman, 551 F.3d at 409 (emphasis in the original). The Ninth Circuit observed that "Freeman's holding was limited to cases 'where recovery is expanded, rather than limited, by virtue of splintering of lawsuits.'" Id. (quoting Freeman, 551 F.3d at 409.) In doing so, the Sixth Circuit "reaffirmed the general rule that 'if a plaintiff 'does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove.'" Id. (quoting Freeman, 551 F.3d at 409) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 294 (1938)). The majority rule appears to be that plaintiffs may intentionally structure their suits and allegations in such a way that avoids CAFA jurisdiction. See, e.g., Ramirez v. Vintage Pharms., LLC, 852 F.3d 324, 330 (3d Cir. 2017) ("As masters of their Complaint, Plaintiffs may structure their action in such a way that intentionally avoids removal under CAFA."); Scimone v. Carnival Corp., 720 F.3d 876 (11th Cir. 2013); Anderson v. Bayer Corp., 610 F.3d 390, 392 (7th Cir. 2010). Other cases might stand for the proposition that courts should defer to how plaintiffs structure their lawsuits absent a strong showing of deliberative CAFA avoidance. See Marple v. T-Mobile Cent. LLC, 639 F.3d 1109, 1110–11 (8th Cir. 2011) ("[T]here is no indication that Marple artificially divided the lawsuit to avoid the CAFA. Although the functional effect of Marple's ten separate lawsuits is avoidance of the CAFA, Marple did not structure her lawsuit to circumnavigate it.").

With these principles in mind, the Court turns to the allegations in the Complaint. It states:

> In this action, Plaintiff Curtis Higggins seeks to represent all individuals who are or have been employed as MERCHANDISERS (California employees who held the title of Merchandiser or Display Stocker or similar position) in full-time

> five day a week schedule positions by Defendant.  The American
> Bottling Company and/or its parent, subsidiaries or affiliated
> companies (hereinafter "Defendant") in California during, at least,
> the four years prior to the filing of this action (hereafter CLASS
> MEMBERS), including, without limitation, as such four-year
> period may have been extended and/or tolled by any prior filed
> class or representative actions.

(Complaint ¶ 1.)  "Plaintiff is also informed and believes that on[e] or more POLICIES (meaning
policy or practice) may have been changed before the filing of this Complaint reducing the
potential CLASS MEMBERS."  (Id. ¶ 3.)  As to the number of proposed class members, the
Complaint alleges:

> Plaintiff alleges about 50 similarly situated CLASS MEMBERS
> are, and throughout the CLASS PERIOD have been, employed by
> Defendant, including being engaged, suffered or permitted to work
> under similar POLICIES.  Plaintiffs and CLASS MEMBERS
> employed were required to own and use personal automobiles to
> travel to and from and to service Defendant's accounts in
> Defendant's trade or business.  Defendant expected and required
> CLASS MEMBERS to own and drive their own personal
> automobiles to and from, and between, the account locations in the
> scope of employment.  Defendant also directed, or suffered and
> permitted, CLASS MEMBERS before or after traveling during a
> workday.

(Id. ¶ 4.)  Plaintiff alleges that the proposed class is less than 100 employees and the amount in
controversy does not exceed $5,000,000.  (Id. ¶ 12.)  Elsewhere, asserting sufficient numerosity,
the Complaint alleges, "[d]uring the CLASS PERIOD Defendant employed more than 40
CLASS MEMBERS in California subject to the same Defendant's POLICIES as
PLAINTIFF."  (Id. ¶ 42.)  The Complaint proposes the following class definition: "Plaintiffs
and all other individuals who are or have been employed as 'MERCHANDISERS' or in any
other similar capacity (hereinafter 'CLASS MEMBERS') by Defendant in California during the
four years prior to the filing of this action, or during any additional period of toll[]ing." (Id. ¶ 41.)

Plaintiff's position is clear: the Complaint alleges a proposed class of more than 40
individuals and less than 100, with his best estimate at around 50 people.  (See Motion at 14.)
Therefore, absent a strong showing to the contrary, based on reasonable assumptions, ABC
cannot use an inflated figure to assert CAFA jurisdiction.  (See id.)  In Plaintiff's view,
Defendant's removal rests on at least three deficiencies or unreasonable assumptions: (1)
Defendant does not allege or explain which Merchandisers are plausibly similarly situated to
those in Plaintiff's proposed class; (2) Plaintiff does not allege all Merchandisers were full-time,
five day a week employees; and (3) Plaintiff does not allege that all such Merchandisers were
subject to the same practices and policies Plaintiff challenges in the lawsuit.  (See id.)

In response, ABC argues that "Plaintiff disavows his own class definition" in an effort to avoid remaining in federal court. (Opposition at 14.) In Defendant's view, "[c]onspicuously absent from the actual class definition in the Complaint is any limitation to Merchandisers who work five days a week." (Id. at 15.) Defendant relies in large part on a Declaration of John Tynan ("Tynan Decl."), Human Resources Director for Keurig Dr. Pepper Inc. ("KDP") and its subsidiary, ABC, to meet its evidentiary burden of demonstrating CAFA jurisdiction.[1] According to Tynan, during the proposed class period, there were a total of 1,841 full-time Merchandisers who worked five days a week and only 72 Merchandisers who worked less than five days a week. (Opposition at 15; Tynan Decl. ¶ 4.) Therefore, even if the proposed class were limited to full-time employees, Defendants claim the distinction would have little bearing on the jurisdictional inquiry. (Opposition at 15.) Plaintiff disputes this contention, arguing that, partially based on discovery in a related class action (Higgins v. The American Bottling Co, et al., LASC No. 20STCV47538), Defendant's practice includes hiring up to 25% part-time Merchandisers. (Motion at 19.) The Court finds it unnecessary to resolve this factual dispute, although it generally agrees with Defendant that, by either estimation, the percentage of part-time employees is not likely to be dispositive of the Motion.

The bigger problem with Defendant's Opposition is that it largely fails to respond to one of the central limiting allegations in Plaintiff's Complaint: Plaintiff never alleges that all Merchandisers, or indeed even a large percentage of them, were subject to or harmed by Defendant's policies. As noted in more detail below, Defendant implausibly contends a 100% violation rate for multiple claims and fails to provide much, if any, foundation for the assumption. While the Court finds Plaintiff's proposed class somewhat ambiguous, it disagrees with Defendant that it is proper to read paragraph 41 of the Complaint in isolation. (See Opposition at 14-15.) It certainly disagrees with Defendant's analysis, described below, which takes the broadest possible reading of the proposed class from a sole allegation in the complaint (paragraph 41), consistently ignores the numerous limiting allegations in the Complaint, and then calculates various damages figures based on cherrypicked assumptions. The Court agrees with Plaintiff that, "paragraph 1 and 41, read reasonably together, limit the class to those classified as 'full time, five-day a week' Merchandisers." (Reply at 2.) More importantly, every significant claim Plaintiff brings is alleged on behalf of Plaintiff and *some class members*. The Complaint asserts that "Plaintiff and *some* class members sustained harm, injuries and/or damages[.]" (Complaint ¶ 43(c)) (emphasis added.) When it describes Defendant's policies, the Complaint alleges facts such as, "Defendant's policy was not to reimburse *some* class members for *some* reimbursable travel mileage expenses." (Id. ¶ 48) (emphasis added.) The Complaint is careful to explain that various policies may have been limited to the San Fernando Branch only. (See id. ¶¶ 15, 17, 20, 23, 35, 39.) The pattern continues for each individual claim: it alleges that *some class members* were not provided rest breaks. (Id. ¶¶ 38–39, 79.) It alleges that *some class members* were not paid overtime. (Id. ¶¶ 33, 36-37, 67-79.) It seeks Labor Code Section 203 penalties for *some class*

---

[1] As noted below, Defendant disputes the relatedness of other actions involving its parent company, KDP, under the misguided impression that this Court would be persuaded by such technicalities. It is ironic that the primary item of evidence it relies upon in an effort to defeat the Motion is a declaration from an employee of said parent company, KDP.

*members*. (Id. 31, 33-37, 72-75.)  Indeed, for the substantive allegations in the Complaint, the word "some" appears in nearly every paragraph.

The parties dispute whose burden it is to demonstrate the number of individuals similarly situated to Plaintiff.  In Defendant's view, it is "precisely backwards" for Plaintiff to claim that it is ABC's burden to "establish that all putative members are similarly situated and were 'subject to the same practices and policies.'"  (Opposition at 14.)  The Court agrees with ABC that a defendant is not required to "establish class treatment to remain in federal court" and that "it is not upon Defendant to establish commonality or to prove liability."  (Id.)  But these are strawman arguments, for Plaintiff does not attempt to shift his burden on these fundamental questions, which would arise at the certification stage.  Plaintiff's contention is far narrower: he has carefully delimited the class he seeks to represent, which he alleges in good faith to be about 50 people; if Defendant seeks to redefine that proposed class in such a way that expands it nearly fortyfold, it is Defendant who bears the evidentiary burden of demonstrating why those additional individuals are necessarily similarly situated and subject to the same practices and policies Plaintiff challenges.  In the Court's view, Plaintiff presents the correct view of who bears the relevant burdens.

As a starting point, Defendant acknowledges "the plaintiff is 'master of her complaint.'" (Opposition at 6) (quoting Guglielmino v. McKee Foods Corp., 506 F.3d 696, 700 (9th Cir. 2007)).  Ibarra establishes the following guiding principles: (1) generally, the jurisdictional facts claimed by the plaintiff in the complaint (such as the amount in controversy) control if the claim is made in good faith; (2) if the face of the complaint does not establish CAFA jurisdiction, a defendant seeking removal must demonstrate by a preponderance of the evidence the facts necessary to establish federal jurisdiction; (3) a defendant is entitled to rely on assumptions, but they must be reasonable; (4) an assumption is improper or unreasonable when it is "not grounded in real evidence"; and (5) if the evidence submitted by both sides is in equipoise, the scales weigh against federal jurisdiction.  See Ibarra, 775 F.3d at 1195-97.  Applying these guidelines, the Court agrees with Plaintiff that it is unreasonable for ABC to "pick and choose what is true through omitting limiting allegations" (Motion at 15), construing the allegations it likes as true (such as a large proposed class size, at least under its reading of the Complaint) and ignoring the ones it does not (such as the dozens of times the word "some" appears in the Complaint).

Ultimately, the critical issue is whether Defendant has submitted sufficient evidence to "controvert Plaintiff's alleged estimate that those harmed number about 50."  (Reply at 6.)  Defendant's evidence is, at least in some respects, impressive—the Appendix is 471 pages, filled with maps and spreadsheets that support its damages calculations referenced throughout the Opposition.  (See Appendix.)  But the Opposition, and the Appendix in support, skips the necessary analysis to first demonstrate that Defendant's view of the number of allegedly harmed individuals is reasonable.  With regard to that assumption, Defendant has submitted no evidence at all.  In other words, all of Defendant's calculations, rigorous as they may appear to be, rest on premises that ABC asks the Court to *assume* are true, not that it has *proven* by a preponderance of the evidence to be true.  But at this stage of the proceedings, the Court must accept *Plaintiff's*

version of the facts as true if it finds them alleged in good faith and Defendant has not controverted them. The basic truth is that "Plaintiff does not allege he sought every theory of damages for every Class Member, let alone all 1,897 Merchandisers or Display Stockers." (Reply at 6.) ABC might have been able to convince the Court that his Complaint necessarily does allege such a thing because, for instance, a certain policy or practice he challenges clearly applied to hundreds, not dozens, of individuals. Instead, ABC simply assumes various violation rates (another problem with its analysis, address below) and multiplies them by a proposed class size *it assumes* (and Plaintiff vigorously contests) to reach amount in controversy figures well in excess of $5,000,000. But it is Mr. Higgins, who lacks (for now) the discovery necessary to precisely determine the number of people he seeks to represent and how much he believes they are owed, who gets to make the *assumptions*. ABC, who possesses all the figures and policies in question, has to supply *evidence*; on this critical point, it has not.

ABC dismisses Plaintiff's reliance on another class action against it in a footnote, simply claiming it is "irrelevant." (Opposition at 14.) That was a mistake. <u>Guzman-Lopez v. Am. Bottling Co.</u>, 2020 WL 913088 (C.D. Cal. Jan. 6, 2020) was a class action lawsuit filed against ABC (and its parent company, KDP) by a former merchandiser who sought to represent a class of non-exempt employees, regardless of union status, over a four-year period, that would consist of approximately 4,557 individuals.[2] <u>Id.</u> at *1-3. ABC defeated class certification by demonstrating that Plaintiff had failed "to demonstrate that he and the class members suffered the same injury or experienced the same policies." <u>Id.</u> at *4. Defendants argued, *inter alia*, that there was no company-wide policy or practice requiring employees to skip meal periods; a rest break policy did not apply to Plaintiff because his union rules pre-empted Defendants' policies; there was no uniform policy that required employees to monitor their phones, radios and pagers[3]; and there was no policy requiring employees to review schedules or perform administrative tasks at home. <u>Id.</u> at *4-5. The <u>Guzman-Lopez</u> court held, "Defendants' declarations and policies submitted in opposition to the Motion effectively refute the existence of actionable common policies and practices that might give rise to common issues capable of class wide resolution." <u>Id.</u> at *6. This Court understands that Defendant "believes it will successfully defeat class certification in this case as well" (Opposition at 14) and that many of these parallel issues must be litigated at a later date. But <u>Guzman-Lopez</u> is not *irrelevant*. As Plaintiff explains:

> Plaintiff knows that Defendant has differing policies, so Plaintiff clearly alleges that he seeks to represent those Class Members who were subjected to the same policies as Plaintiff. Plaintiff, in good-faith, alleged that number to be 50 merchandisers. Defendant insists that it can ignore those allegations, claim for purposes of

---

[2] At Plaintiff's request (Motion at 16), the Court takes judicial notice of the case. <u>See United States ex. Rel. Robinson Rancheria Citizens Council</u>, 917 F.2d at 248; <u>Ducket</u>, 67 F.3d at 741 (9th Cir. 1995).

[3] Despite the reference to pagers, the Court reiterates the recency of the case, brought by a Plaintiff who worked at ABC from 2017 to 2018. <u>Id.</u> at *1.

> removal that the Court must presume every employee was treated
> in equivalent manner; and after the Court has accepted that
> foundationless assumption for purposes of removal, Defendant will
> then proceed to explain how every employee was subjected to
> different policies and procedures.

(Reply at 7.)

The Court finds that Plaintiff, doubtless aware of past (failed) class actions against Defendant and the many other related class actions pending before the courts (see below), has alleged in good faith that he seeks to represent a narrow class that might stand a greater chance of certification. The numerous limiting allegations in the Complaint support that view. The Court would have considered an argument that this is all an artifice to "circumnavigate" CAFA jurisdiction, see Marple, 639 F.3d at 1110-11, but ABC does not develop the point. On the record before it, the Court cannot conclude that ABC has met its burden of demonstrating the proposed class is greater than 100 individuals, let alone 1,841. On that basis alone, the Court would GRANT the Motion.

### D. CAFA: $5,000,000 or More in Controversy

Once ABC's claim as to the number of individuals in the putative class is rejected, its calculations purporting to demonstrate an amount in controversy greater than $5,000,000 quickly fall apart. See Lacasse v. USANA Health Scis., Inc., 2021 WL 107143, at *3 (E.D. Cal. Jan. 12, 2021) (finding that a defendant's "calculations . . . demonstrate how arbitrary [their] assumptions are: they show how simple it is to manipulate the assumptions to produce totals larger . . . than the $5 million threshold.").

ABC claims that the amount in controversy for the rest break claim is at least $1,966,591.88. (Opposition at 16.) ABC reaches that figure from the number of putative class members (1,841 individuals), the total number of shifts they worked entitling them to rest breaks (507,090) and an assumed 20 percent violation rate. (Id. at 16-17.) As to Plaintiff's overtime claim, ABC estimates the amount in controversy is between $2,506,090.46 and $7,518,208.38. (Id. at 17.) While ABC acknowledges that it "conservatively estimated" 10 minutes of overtime each workweek in its NOR, it disavows that figure in its Opposition, asserting that the average amount of time it would have taken Plaintiff to travel to and from his home is 41.4 minutes. (Id. at 17-18.) Therefore, ABC reaches the lower end of the range with an assumption of 10 minutes of overtime each day and the higher end of the range with a 30-minute assumption for each class member. (Id. at 19.) ABC estimates the amount in controversy for Plaintiff's reimbursement claim is $10,157,790.15. (Id.) It reaches that figure based on the average number of miles that Plaintiff drove to and from his first and last store, 34.5 miles, multiplied by the number of putative class members. (Id.) ABC claims that the amount in controversy for Plaintiff's waiting time penalty claim is $4,060,438.56. (Id. at 20.) Because Plaintiff's waiting time penalties are tied to his other claims, Defendant asserts it is entitled to assume the maximum 30 days of waiting time penalties. (Id.) ABC claims that, during the relevant period, there were

approximately 967 Merchandisers whose employment was terminated. (Id.) ABC reaches the amount in controversy figure by multiplying that number of individuals by the amount equivalent to 30 days of wages. (Id.) Finally, accepting Plaintiff's estimate that attorney's fees would amount to approximately 25 percent of the total class recovery, it estimates that attorney's fees would add up to $4,672,722.51. (Id. at 21.) In sum, ABC claims the amount in controversy is likely at least $23,363.613. (Id.)

For the reasons stated above, the Court will not use ABC's assumption that the putative class consists of 1,841 individuals. While Plaintiff does not supply his own precise estimate of the amount in controversy (nor can he, absent discovery), it is easy for the Court to determine a general approximation based on his putative class size. According to Defendant's calculations, setting aside the attorney's fees ($4,672,722.51), a total recovery of $18,895,890.50 divided by 1,897 putative class members would amount to a recovery of approximately $9,960.93 per employee. Assuming that rate and a putative class of approximately 50 individuals, the total recovery would fall just short of $500,000. A 25% attorneys' fee from that total recovery would amount to approximately $125,000; without reference to Defendant's calculations raised in the Opposition, Plaintiff estimated that attorneys' fees might range from $250,000 to $500,000. (Motion at 19.) Therefore, adding these figures together, Plaintiff's estimated class size (or the expected recovery for each individual, applying Defendant's figures that Plaintiff disputes) could be off by a factor of five to nine times and still fall below $5,000,000.

While the precise methodology ABC employs in reaching its amount in controversy figures is somewhat besides the point given the analysis above, the Court further notes that many of Defendant's assumptions are unreasonable. Plaintiff accuses Defendant of "engag[ing] in the standard routine fare of plucking 'a violation rate out of the air and calling it 'reasonable,' which is 'a wasteful and silly, but routine, exercise in mathematical fantasyland.'" (Reply at 8-9) (quoting Toribio v. ITT Aerospace Controls LLC, 2019 WL 4254935, at *3 (C.D. Cal. Sept. 5, 2019). Plaintiff somewhat overstates the argument. While "a damages assessment may require a chain of reasoning that includes assumptions[,]…those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." Ibarra, 775 F.3d at 1199. Numerous courts have rejected assumptions of particular violation rates absent evidence supporting such assumptions. See, e.g., Basile v. Aaron Bros., Inc., 2018 WL 655360, at *2 (S.D. Cal. Feb. 1, 2018) ("Although the allegations indicate that violations were regular, they do not speak to their frequency, and are therefore insufficient to support the assumption of any particular rate of violation."); Sanders v. Old Dominion Freight Line, Inc., 2017 WL 5973566, at *4 (S.D. Cal. Feb. 2, 2017) ("[W]ithout evidence to support this violation rate, the use of a 50% violation rate (or virtually any violation rate for that matter) is completely arbitrary and little more than speculation and conjecture."); Baretich v. Everett Fin., Inc., 2018 WL 4579857, at *5 (S.D. Cal. Sept. 25, 2018) ("Ms. Dworshak's declaration does not address Defendant's alleged violation rates and thus offers no information by which the Court may conclude that Defendant's assumptions were not 'pulled from thin air.'")

As Defendant points out, however, "when a plaintiff alleges a policy or practice of authorizing and permitting noncompliant rest periods, it reasonable for the defendant to assume

between 20% and 50% rest period violation rates in assessing the amount in controversy." (Opposition at 16) (citing <u>Bermejo v. Lab'y. Corp</u>, 2020 WL 6392558, at *6 (C.D. Cal. Nov. 2, 2020) (finding 20% violation rate for a meal and break period claim to be reasonable) and <u>Garza v. Brinderson Constructors, Inc.</u>, 178 F. Supp. 3d 906, 911 (N.D. Cal. 2016) (assumption that each putative class member missed one meal break and one rest period per workweek was reasonable)). In line with these authorities, the Court rejects the view that *any* assumed violation rate would be unreasonable, which Plaintiff comes at least close to suggesting.

It follows, then, that Defendant's assumption of a 20% violation rate regarding the rest break claim is not manifestly unreasonable. (See Opposition at 16-17.) But Defendant cites no authority in support of a far more aggressive position: that it is entitled to assume Plaintiff alleges that ABC failed to provide compliant rest breaks on *every day* that an employee worked at least 3.5 hours. The Complaint certainly alleges no such thing. As ABC itself notes, the Complaint alleges that Defendant maintained a policy that "Plaintiff and some CLASS MEMBERS should remain on the work premises for rest breaks" and maintained a policy of not providing "Plaintiff and some CLASS members suitable resting facilities." (Opposition at 16) (citing Complaint ¶ 79). Unlike, say, <u>Garza</u>, 178 F. Supp 3d 906, which found an assumption that each putative class member missed a total of two break periods per workweek reasonable, here Defendant assumes that 20% of putative class members missed a rest period on *every shift* they worked in excess of 3.5 hours. Defendant's aggressive rest period assumptions are thus much more analogous to cases in which courts have rejected them as unfounded. <u>See, e.g.</u>, <u>Smith v. Diamond Resorts Mgmt., Inc.</u>, 2016 WL 356020, at *3 (C.D. Cal. Jan. 29, 2016) (finding insufficient evidence behind assumption of one missed meal period and one missed rest break per week); <u>Cackin v. Ingersoll-Rand Indus. U.S., Inc.</u>, 2021 WL 2222217, at *3 (C.D. Cal. June 2, 2021) ("If one is going to assume a violation rate based on nothing more than language in a complaint referencing a 'pattern and practice,' then there is no basis for suggesting that a violation rate of 25% is any more or less reasonable than a violation rate of once per week or once per month.")[4]

Notwithstanding the above, many of Defendant's remaining assumptions make its rest break calculations look decidedly *reasonable* by comparison. Without clearly spelling out what it is doing, Defendant assumes an 100% violation rate regarding the overtime claim and that every putative class member was owed overtime compensation for *every day* she worked. (See Opposition at 17-18) (assuming between 10 and 30 minutes per *day* of unpaid overtime "for each putative class member.") Again, as Plaintiff notes in the Motion, nowhere in the Complaint does he allege "that *each* full time Class Member is owed overtime" (Motion at 18), let alone that every employee is owed overtime for every day she worked. The Complaint alleges, for example, "Defendant also suffered or permitted some CLASS MEMBERS at times to report for work a second time during a workday, after clocking out for the last stop." (Complaint ¶ 69.) ABC's assumption is unreasonable, resting on a (deliberate) misreading of the Complaint. <u>See</u> <u>Smith v.</u>

---

[4] The Court notes that cases analyzing "pattern and practice" allegations, which Plaintiff does not make here, are inapplicable. <u>See, e.g.</u>, <u>Torrez v. Freedom Mortg., Corp.</u>, 2017 WL 2713400, at *16 (C.D. Cal. June 22, 2017) ((noting that "pattern and practice" allegations could be "reasonably interpreted to imply nearly 100% violation rates")).

Diamond Resorts Mgmt., Inc., 2016 WL 356020, at *3 (C.D. Cal. Jan. 29, 2016) (finding that defendants had failed to meet their evidentiary burden of supporting a violation rate of one hour of overtime per week). The same problem plagues Defendant's analysis of the remaining claims. The Complaint alleges, "Defendant's POLICY was not to reimburse some CLASS MEMBERS for some reimbursable travel mileage expenses." (Complaint ¶ 48.) Despite these obvious limiting allegations, Defendant simply calculates the average number of miles that Plaintiff drove to and from his first and last store on a daily basis, makes the conclusory observation that "there is no evidence presented suggesting that the average number of miles Plaintiff drove . . . was not typical of all other Merchandisers," and then multiplies that figure by *every shift* worked by *every* employee in the putative class of over 1,800 individuals. (See Opposition at 19.) With assumptions like these, it is unsurprising that Defendant claims the reimbursement claim alone is worth a whopping $10 million. From allegations that some class members are entitled to Section 203 waiting time penalties (Complaint ¶¶ 63-65, 67-69, 71), Defendant assumes an 100% violation rate, and the maximum 30 days of waiting time penalties at that. (See Opposition at 20.) The Section 203 claim is solely based on Defendant's alleged failure to pay statutory wages, not a failure to premium pay for missed breaks. (See Complaint ¶¶ 63-65, 67-69, 71.) Plaintiff reiterates that the relevant allegations here concern the San Fernando Branch, not approximately 20 other Branches in California. (Motion at 17-18; Reply at 9.) At no point in its analysis does Defendant explain its assumption that it "violated pay obligations, all the time, for all workers, without providing evidence for supporting the inference that because the local branch managers in San Fernando utilized unlawful practices, there is even a basis for assuming that all branches and locations utilized the same practices." (Reply at 9.) This is not to say that the Court would necessarily find such an assumption unreasonable if ABC had attempted to justify it. Rather, the Court needs evidence it can weigh to determine the rationality of the assumption. ABC fails to supply it.

Based on the above, the Court does not find that ABC has met its burden of demonstrating CAFA jurisdiction. Accordingly, the Motion to Remand is GRANTED.

## E.  Deficiencies in Removal Procedure

While the Court need not address Plaintiff's arguments concerning ABC's compliance with removal procedural requirements given its holding above, it is useful to point out that they provide an alternative basis for the result reached today.

Plaintiff argues that ABC violated statutory requirements in at least three meaningful ways. First, Plaintiff alleges that Defendant failed to provide notice to all real parties in interest. (Motion at 11.) Specifically, "Defendant has removed *five* putative class actions without filing notices of related cases, even though Plaintiffs acknowledge overlapping claims as required by the relevant local rules." (Id. at 11.) Second, Plaintiff alleges that ABC failed to timely serve notice of removal on the Los Angeles Superior Court. (Id. at 13.) In Plaintiff's view, Defendant's 10-day delay in doing so compels remand, absent an adequate justification. (Id.) He asserts that Defendant has not offered an adequate explanation for its violation of statutory and local rules. (Reply at 12-13.) Third, ABC failed to file statutorily required documents. (Motion at 13.)

Plaintiff alleges that Defendant failed to attach to its Notice of Removal an initial state-court order served on Defendant; a state-court stipulation with counsel and an underlying order staying the action and requiring a meet and confer; and a Notice of Related Case served on Defendant in the underlying state case.  (Id. at 13.)

In response to these arguments, ABC accuses Plaintiff of "throw[ing] spaghetti at the wall in the hopes that something sticks[.]" (Opposition at 9.)  First, ABC argues that it did file a Notice of Related Case on August 19, 2022, "listing the only other case against Defendant pending in the Central District as required by Local Rule 83-1.3," thus satisfying its obligations.  (Id. at 10.)  Second, ABC argues that 28 U.S.C. § 1446(d) does not require it "to provide notice of the removal to all other plaintiff attorneys that have class actions against Defendant or any company that has a relation to Defendant— i.e., provide notice of removal to plaintiffs in the Zarazua, Ualat, Trujillo, and other class actions that are currently pending."  (Id.)  In its view, "many of the other actions Plaintiff mentions in his moving papers as possible 'adverse parties' do not even involve the same defendants as the current action (i.e. Zarazua names Keurig Dr. Pepper as a defendant, not ABC)."  (Id.)  Therefore, ABC argues it satisfied its statutory obligations by serving Plaintiff with the Notice of Removal and filing a Notice of Related Cases.  (Id.)  Third, ABC acknowledges it filed its notice to state court of removal 10 days after the fact, but argues that Plaintiff have not provided sufficient authority demonstrating such tardiness mandates remand.  (See id. at 11-12.)  Fourth, ABC acknowledges that it initially failed to file the proper documents with its Notice of Removal.  (Id. at 12.)  It argues, however, that the delay in meeting the requirements of 28 U.S.C. § 1446(a) was "inadvertent" and that it corrected the defect by filing a Notice of Errata with this Court.  (Id. at 13.)  Because it claims this action cured any defect, Plaintiff suffered no prejudice, and "there has been no interference with this Court's ability to effectively administer and handle this matter," it asks the Court to "disregard" Plaintiff's argument.  (Id.)

At a higher level of generality, Defendant's view is that "procedural defects to removal can be cured and do not require remand."  (Opposition at 7.)  For that proposition, ABC cites three cases: Soliman v. Philip Morris Inc., 311 F.3d 966, 970 (9th Cir. 2002) ("A procedural defect existing at the time of removal but cured prior to entry of judgment does not warrant reversal and remand of the matter to state court.") (citation omitted); Western Chance No. 2, Inc. v. KFC Corp., 957 F.2d 1538, 1540 n.3 (9th Cir. 1992) ("How th[e] failure [to attach state court documents] could deprive the court of jurisdiction is not clear to us.  To the extent that the failure to attach that document was an error, it was one that the district court could allow [defendant] to cure, as it did"); Kosen v. Ruffing, 2009 WL 56040, at *10 (S.D. Cal. Jan. 7, 2009) ("The Ninth Circuit has found that defects in removal procedure are not jurisdiction defects, so they may be waived or corrected").  In response, Plaintiff notes, "ABC's citations may have held that statutory violations might fall short of depriving jurisdiction, but there can be no doubt that ABC's prolific violations of mandatory statutory requirements preclude ABC from demanding federal jurisdiction."  (Reply at 4.)

The Court notes that Plaintiff carefully distinguishes each of these three cases and largely agrees with his analysis.  (See Reply at 9-13.)  Fundamentally, though, whether these cases are

distinguishable or not, no precedent binds this Court one way or the other. These cases, and the cases they in turn cite, involve fact-specific analysis of the severity of the procedural defects, their impact on the proceedings, and whether they merit remand. The Court agrees that ABC's technical violations in isolation, or even in the aggregate, likely do not deprive this Court of jurisdiction over the case. Rather, it is within this Court's discretion to determine whether the defects merit remand. See Maniar v. F.D.I.C., 979 F.2d 782, 785 (9th Cir. 1992) (remand may be granted for procedural defects, at least when raised by motion); N. California Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co., 69 F.3d 1034, 1038 (9th Cir. 1995) (procedural defects in removal procedure must be raised no later than 30 days after the filing of the notice of removal).

Nearly 140 years ago, the Supreme Court considered whether a district court properly granted remand based upon the defendant's failure to timely file a copy of the record and enter his appearance within the time prescribed by statute. See St. Paul & C.R. Co. v. McLean, 108 U.S. 212, 212 (1883). The Court held that such a failure "does not deprive that court of jurisdiction to proceed in the action." Id. at 216. While it is "undoubtedly within the sound legal discretion of the [lower] court to proceed as if the copy had been filed within the time prescribed by statute," "it clearly had a like discretion to determine whether the reasons given for the failure to comply in that respect with the law were sufficient." Id. In that light, ABC's failure to justify its actions—relying instead on misguided assertions that these defects are "trivial" (Opposition at 7) or not defects at all—weigh against the Court exercising its discretion to excuse the violations and retain jurisdiction over the case.

28 U.S.C. § 1446(a) requires a removing defendant to file in federal court a notice of removal, "together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." "Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(d). While there appears to be an absence of authority on the precise meaning of "adverse parties," at least one court has construed it to be the equivalent of "all real parties in interest." See Thorpe v. Daugherty, 606 F. Supp. 226, 227 (N.D. Ga. 1985) (citing 1A J. Moore & B. Ringle, Moore's Federal Practice ¶ 0.168[.3–8–2] n. 7 (2d ed. 1983)) (finding that a cross-claimant was not an "adverse party"). In Plaintiff's view, parties commonly provide the required statutory notice by filing notices of related cases, pursuant to Local Rule. (Motion at 12.) Therefore, Plaintiff argues that Defendants' repeated failure to properly file such notices regarding other pending class actions before the federal and state courts violates various Local Rules and thus the statutory directive. (Id.)

The Local Rule applicable in this District is 83-1.3:

> **Notice of Related Civil Cases.** It shall be the responsibility of the parties to promptly file a Notice of Related Cases whenever two or more civil cases filed in this District:

> (a) arise from the same or a closely related transaction, happening, or event;
>
> (b) call for determination of the same or substantially related or similar questions of law and fact; or
>
> (c) for other reasons would entail substantial duplication of labor if heard by different judges.
>
> . . .
>
> The Notice must be filed at the time any case (including a notice of removal or bankruptcy appeal) appearing to relate to another is filed, or as soon thereafter as it reasonably should appear that the case relates to another.  The Notice must be served on all parties who have appeared in the case and concurrently with service of the complaint.

CACD L.R. 83-1-4.  A parallel provision in the Northern District of California states, "if two representative (e.g., class, collective, PAGA, etc.) actions involve overlapping claims (i.e., the definitions of covered individuals overlap and the claims asserted overlap), they fall within the coverage of this rule."  CAND L.R. 3-13(a).  In California state court, "[w]henever a party in a civil action knows or learns that the action or proceeding is related to another action or proceeding pending, dismissed, or disposed of by judgment in any state or federal court in California, the party must serve and file a Notice of Related Case."  Cal. Rules of Court, R. 3.300(b).

 As Plaintiff observes in his NORC, "there are currently at least eight wage-and-hour class actions and PAGA actions pending against Defendant, and/or Defendant's corporate parent and corporate affiliates in various federal and state courts in the state of California."  (Plaintiff NORC.)  These cases are as follows:

<u>Central District of California Cases</u>

- <u>Samuel Ryciak v. The American Bottling Co et al.</u>, 5:22-cv-00945-JGB (underlying complaint filed in state court on May 4, 2022 and removed on June 6, 2022; same Defendant and Defendant's counsel as the instant action; putative class action asserting various wage and hour claims);
- <u>John Trujillo et al. v. Motts LLP et al.</u>, 2:22-cv-05103-JGB (underlying complaint filed in state court on May 19, 2022 and removed on July 22, 2022; parent company KDP named as a defendant; defendant's counsel is Reed Smith LLP; putative class action asserting various wage and hour claims);
- <u>Abel Moreno et al. v. Keurig Dr. Pepper Inc. et al.</u>, 5:22-cv-00448-MEMF-SP (underlying complaint filed in state court on November 24, 2021 and removed on March 11, 2022; parent company KDP named as a defendant; defendant's counsel the same as

the instant action; PAGA action asserting various wage and hour claims; currently stayed pending arbitration).
- The instant action.

## Northern District of California Cases

- <u>Ualat v. The American Bottling Company</u>, <u>et al.</u>, 4:22-cv-4184 (underlying complaint filed in state court on June 3, 2022 and removed on July 18, 2022; same Defendant and Defendant's counsel as the instant action; putative class action asserting various wage and hour claims).

## Eastern District of California Cases

- <u>Francisco Bello v. The American Bottling Company</u>, <u>et al.</u>, 2:22-cv-01333-KJM (underlying complaint filed in state court on June 23, 2022 and removed on July 27, 2022; same Defendant and Defendant's counsel as the instant action; putative class action asserting various wage and hour claims).

## State Court Cases

- Two actions currently pending in the Superior Court for the County of San Bernardino: <u>Zarazua v. Industrial Clerical Recruiters et al.</u>, Nos. CIVSB2126751(PAGA) and CIVSB2202968 (Class).  A named Defendant is parent company KDP, represented by the same Defendant's counsel as the instant action. The actions assert various wage and hour claims against KDP.

(Plaintiff NORC.)

The NORC filed by Defendant in this action mentions only <u>Ryciak.</u>  (ABC NORC.)  It sets forth the overlapping factual allegations and acknowledges that the two actions are related. (<u>Id.</u>)  Intriguingly, on October 18, 2022, long after Plaintiff filed the Motion, the same Defendant's counsel as the instant action (representing ABC, KDP and Dr. Pepper/Seven Up Inc.) filed a NORC in <u>Ryciak</u> that acknowledged the instant case, <u>Higgins</u>, and <u>Trujillo</u>.  (<u>Ryciak</u>, 5:22-cv-009450-JGB-KK, Dkt. No. 24.)  In this action, however, Defendant has never filed a NORC, or amended its original NORC, that acknowledges the existence of <u>Trujillo</u>, or indeed any of the other above cases.

In its defense, ABC raises a few contentions at least as "technical" as the defects they attempt to refute.  Defendant claims that actions, apparently even ones it might concede involve overlapping claims, asserted against its parent company, KDP, do not fit the notice requirements. (Opposition at 1, 10-11.)  It claims, "[a]s Defendant is not even a party to the <u>Zarazua</u> action, it is unclear how the <u>Zarazua</u> action has any impact on this action."  (Opposition at 24.)  That argument, disclaiming the relatedness of actions involving a parent company, is unsupported by any authority.  Under its interpretation of CACD L.R. 83-1.3, ABC asserts that it is only required

to disclose actions pending within the Central District against itself, excluding related actions in other forums or against related entities. (Opposition at 10.)

Even if the Court were persuaded that such arguments for strict construction were correct, it finds that Defendant's own actions suggest it does not really believe in them as a practical matter. If Zarazua really was (and remains) irrelevant, why would, in its own words, "counsel for Defendant ABC voluntarily disclose[] to counsel or Plaintiff the existence of the Zarazua action during the parties' meet and confer conference, attempting to bring transparency to the fact that the instant Higgins matter was not the first class action in line"? (Opposition at 1.) Why not voluntarily disclose to this Court the existence of Zarazua so it knew another overlapping class action was pending in state court? Moreover, such a strict construction of notice requirements is belied by Defendant's filing of a NORC in the Trujillo case, which acknowledged the existence of Ryciak, Ualat, *and* Bello; the key difference is that in Trujillo, Defendant was represented by different counsel, Reed Smith LLP. (Trujillo, 2:22-cv-05103, Dkt. No. 6.)

Finally, the Court acknowledges ABC's appeal to nuances of the corporate form and agrees that whether an action names a parent corporation (like KDP) or a wholly-owned subsidiary (like ABC) will affect important issues in a case. At the very least, it would shape which entity bears the balance sheet risk of a potential settlement or judgment. But ABC's doublespeak on the matter undermines its appeal to formalism. Probably the most important facts in this action (and its eight related cases) involve whether managers at Defendant enacted, approved or implemented policies challenged by Plaintiff related to working conditions and hours. Doubtless, a corporation's human resources department would have some involvement with these issues. It follows, then, that the primary evidence ABC marshals in opposition to the Motion comes from human resources employees who could speak to the facts in question. The Tynan Declaration states, "I am a Human Resources Director for Keurig Dr. Pepper Inc. ("KDP") and its subsidiary, the Defendant in this action – The American Bottling Company ("ABC")." (Tynan Decl. ¶ 2.) In his role as an HR director for both KDP and ABC, Mr. Tynan notes he is "familiar with the corporate and organization structure of Defendant ABC." (Id.) And in his role, he has "access to the employment records and personnel-related information for employees of ABC, including Merchandisers in California." (Id.) The Declaration of Daniel Whang, Defendant's counsel, acknowledges that his source for key data—five files with timekeeping figures for employees and a sixth file that included "information such as the hourly rate, position, location, hire data, and termination date for each Merchandiser" —is "Katie Nunn, Senior Director, Accounting Operations & Payroll for Keurig Dr. Pepper Inc." (Appendix, Whang Decl. ¶ 3.) As Plaintiff observes, these declaration reflect that KDP "is an employer, as it exercises control of hours and working conditions." (Reply at 18.)

ABC concedes that it failed to file the requisite notice of removal in state court for 10 days. (Opposition at 11.) Its primary argument is that the closest authority Plaintiff could find on the precise issue, Master Equip., Inc. v. Home Ins. Co., 342 F. Supp. 549, 551 (E.D. Pa. 1972), stated only in *dicta* that, in a situation involving a nine-day delay between removal and notice to the state court, a party would need to provide an explanation to justify it being "prompt," as

required by statute.  (Opposition at 11.)  One might expect that ABC would provide, in the sentences that follow such an observation, a justification for its delay.  But Defendant never offers one, either in the Opposition or in any other filing.

ABC's argument regarding its failure to attach relevant documents to its Notice of Removal is a distraction.  Defendant notes at length that the state court docket appears to have erroneously included a nonexistent motion for summary judgment.  (Opposition at 12-13.)  The Court cannot discern why this matters.  Plaintiff never complains about a failure to attach an erroneous motion for summary judgment, which would not be statutorily required in any event.  (Reply at 9.)  Plaintiff's arguments concern the "process, pleadings and orders" served upon ABC.  (Id.)  Regarding those documents, ABC provides no explanation why it could not have filed those documents in its original Notice of Removal.  Its only real argument on the matter is that it later filed a Notice of Errata, and nobody was prejudiced by it.  (See Opposition at 12.)

But, as Plaintiff notes, there is authority at least arguably suggesting, if not squarely holding, that Defendant's Notice of Errata, which it filed without leave of court, was unauthorized.  (Reply at 14-15) (citing Emeldi v. Univ. of Oregon, 673 F.3d 1218, 1230 (9th Cir.), republished as amended at 698 F.3d 715 (9th Cir. 2012) (nonsubstantive amendments may be made without leave of court); ARCO Env't Remediation, L.L.C. v. Dep't of Health & Env't Quality of Montana, 213 F.3d 1108, 1117 (9th Cir. 2000) (new alternative bases for removal jurisdiction may not be added after 30-day period has expired); Force v. Advanced Structural Techs., Inc., 2020 WL 4539026, at *3 (C.D. Cal. Aug. 6, 2020)).  Moreover, Plaintiff argues that, since service on the state court is required to perfect federal jurisdiction and divest the state court of jurisdiction, ABC's failure to timely do so and provide this Court with proof of it could be considered a "substantial defect" that courts have barred defendants from curing after thirty days post-removal.  (Reply at 11) (citing Barrow Dev. Co. v. Fulton Ins. Co., 418 F.2d 316, 317 (9th Cir. 1969) ("petition cannot be thereafter amended to add allegations of substance but solely to clarify 'defective' allegations of jurisdiction previously made"); Maddox v. Delta Airlines, 2010 WL 3909228, at *7 (N.D. Okla. 2010); Marshall v. Skydive Am. S., 903 F. Supp. 1067, 1070 (E.D. Tex. 1995); Rose v. Elliott, 70 F.R.D. 422, 423 (E.D. Tenn. 1976)).

As Plaintiff puts it, "[t]he issue here is whether this Court should excuse multiple violations of 'shall' obligations in removal."  (Reply at 13.)  While such violations would not deprive this Court of jurisdiction, the Court could exercise its discretion to remand if it did not find good cause to accept the defects.  ABC's repeated invocation of "inadvertent" mistakes (Opposition at 1, 5, 12) would not have impressed Justice Harlan and his fellow members of the Supreme Court in 1883.  See St. Paul, 108 U.S. at 217 ("The only reason given for the failure to file the transcript within proper time was inadvertence upon the part of counsel; in other words, the filing was overlooked.  It is scarcely necessary to say that this did not constitute a sufficient legal reason for not complying with the statute.  At any rate, the refusal of the court to accept it as satisfactory cannot be deemed erroneous.").  And while ABC insists that all of these issues are "trivial" and caused no prejudice to any party (Opposition at 7, 12-13), Defendant never tries to explain why Plaintiff is wrong that he has suffered prejudice.  As Plaintiff explains in the Motion, on August 4, 2022, Plaintiff told Defendant why he felt he was prejudiced by Defendant's

collective actions, not least the failure to attach required documents to the Notice of Removal. (Motion at 13.) Among other (strongly worded) contentions, Plaintiff accuses ABC of "seek[ing[ to resolve  this matter in the nonremoved <u>Zarazua</u> proceeding, and principles of 'judicial economy, fairness, and comity' counsel that the federal courts should not serve as a vehicle for holding plaintiffs out of Defendant's hair while Defendant subjects the putative <u>Higgins</u> class to the prejudice of a reverse auction." (Motion, Ex. B.)  The Motion itself makes the following argument:

> Aside from the defects and deficiencies in Defendant's Notice of Removal and equitable exceptions to removal, the Court should also abstain and remand due to Defendant's forum shopping and/or under <u>Colorado River</u> abstention.  Defendant has apparently declined to remove a putative class action with broader class definitions while removing subsequent class actions with equivalent and/or narrower class definitions.  Simultaneously, Defendant stipulated to stay and mediate the nonremoved action. Defendant is patently forum shopping and misusing CAFA to circumvent state-court judicial powers while intending to imminently sweep jurisdiction away from under this Court.

(Motion at 4.)  The Court shares these concerns.  Many of Defendant's tactics smack of gamesmanship.  Whether or not strictly required by local rule or statute, Defendant's pattern (shared by its parent, KDP) in providing late notice to parties and courts, or omitting notice altogether, of the *eight* related class actions it is currently involved in certainly hints of a strategic machination.  Its motive in hiding the ball would be to stymie its adversaries, or unsympathetic judges, in foiling its careful scheme to adjudicate the eight cases in its preferred order, forum (state or federal) and vehicle for dispute resolution (mediation, arbitration or litigation).  Again, none of this forces the Court's hand in that it deprives it of jurisdiction or clearly demands remand under binding precedent.  But Defendant's conduct, none of which it makes much effort to explain or justify in the Opposition, certainly makes this Court disinclined to exercise its discretion and forgive its errors.

For these additional reasons, the Court GRANTS the Motion.[5]

## IV.   CONCLUSION

For the reasons above, the Court **GRANTS** the Motion and **REMANDS** the case to the Superior Court of California for the County of Los Angeles for all further proceedings.  The hearing set for October 24, 2022 is VACATED.  The Clerk is directed to close the case.

**IT IS SO ORDERED.**

---

[5] The Court does not reach Plaintiff's additional and/or alternative arguments regarding abstention and waiver of the right to remove.  (<u>See</u> <u>Motion</u> at 20-25.)